## No. 9257.

### EATON *v.* COMMERCIAL NATIONAL BANK.

1. EVIDENCE—*Parol Admissible*, to explain and contradict the recitations of a promissory note that the maker has pledged for the payment thereof, specified collaterals. It may be shown that in fact the collaterals were owned and pledged by another.

2. PLEDGE—*Duty of Pledgee.* The holder of a note which recites the pledge of collaterals for its security, suing thereon and refusing to accept payment and return the collaterals to the maker, on the ground that another is entitled thereto, must go to the bottom of the matter and establish that the other party, and not the maker of the note, is entitled to the pledge.

3. *Conversion of Collaterals.* The placing of collaterals by a bank in the name of its cashier is not conversion. Refusal to deliver them to the one entitled, on tender of the amount due, is evidence of, and may amount to a conversion.

4. EXCEPTIONS—*Announced by the Court.* The exception so announced is deemed the saving of an exception by the defeated party, to the ruling so announced.

5. PROMISSORY NOTE—*Provision for Payment of an Attorney's Fee.* A promissory note authorized a confession of judgment thereon "for the amount due, costs of suit, and attorney's fee". *Held* that in a hostile action upon the note no attorney's fee is recoverable.

*Error to Denver District Court, Hon. Charles C. Butler, Judge.*

*Department Two.*

Mr. MILTON SMITH, Mr. CHARLES R. BROCK, Mr. W. H. FERGUSON, Mr. ROBT. F. ARMSTRONG, for plaintiff in error.

Mr. JOHN D. WARFIELD, for defendant in error.

Opinion by Denison, J.

IN this case the Bank, defendant in error, had judgment against Eaton, plaintiff in error, on a promissory note. The judgment was for $4,000 and interest and included also $500, attorney's fee.

The note was as follows:

(Plaintiff's Exhibit "C.")

"$4,000.00 Coshocton, Ohio, Oct. 15, 1914.

On demand after date, for value received, we jointly and severally promise to pay to the order of the Commercial National Bank of Coshocton, Ohio, at its office, Four Thousand Dollars—DOLLARS, with interest at seven per cent. per annum, payable semi-annually, having deposited with them as collateral security Certificates Nos. 54 and 90, for sixty (60) shares of the preferred stock of The Dominion Land Company, with authority to sell the same, without notice, at public or private sale, or otherwise at their option, on the non-performance of this promise. It is also agreed that the holder or assigns may also hold said property as security for, or out of the proceeds thereof may pay any other claims the holder may have against me while said property or the proceeds thereof remain in the holder's hands.

In case of sale of above mentioned securities, the holders of this note shall not be liable for more than the net proceeds of such sale.

And we hereby authorize any attorney-at-law in the United States to appear before any court of record after the above money becomes due, and waive the issuance and service of process, and confess judgment against us, or either of us, in favor of the holder of this note, for the amount appearing due, the costs of suit and an attorney fee;

and thereupon to release all errors in any action brought, or judgment rendered upon this note.

(Signed)  J. H. EATON."

At the trial Eaton tendered the amount of the note, demanding the collateral, and by leave of court amended (or supplemented) his pleadings to allege the tender, refusal and conversion of the collateral.  The plaintiff was willing to accept payment of the note, but refused to surrender the collateral on the ground that it belonged to one Swisher, of Ohio, who had deposited it as collateral to Eaton's note, saying that Eaton had given the note for discount on account of a debt to him.  Eaton claimed that the note was an accommodation note for Swisher's benefit, and that he, therefore, was entitled to be protected by the collateral; but he also claimed that by the terms of the note itself he was the pledgor of the collateral, was entitled to its return upon payment, and that the bank could not vary those terms by parol.  The bank, on the other hand, claimed that Eaton was indebted to Swisher when the note was made, and that it was given on account of the debt, that the statement in the note that the stock was pledged by the maker was analogous to a mere receipt by the bank, and was subject, therefore, to explanation or contradiction.

The learned judge below was of the opinion that the note, in this respect, was open to explanation and contradiction, and that Swisher was shown to be the owner and pledgor of the stock, though Eaton was an accommodation maker, but that since Swisher's rights could not be determined, he not being a party, the judgment must be for the plaintiff.  The flaw in this logic, we think, lies in the fact that, in finding that he was the owner of the stock, the court was partly determining Swisher's rights, but not wholly.

The payor of a note is entitled, upon payment, to the collateral which he pledged.  By the terms of this note Eaton was the payor and pledgor.  On the face of the note, then, he is entitled to the return of the collateral.  Upon

the question whether the statement in the note that the stock is pledged by the maker is a matter which can be explained or contradicted by evidence, we think the court was right. *Pollard v. Vinton,* 105 U. S. 7, 26 L. Ed. 998; *Iron Mt. Ry. Co. v. Knight,* 122 U. S. 79, 87, 30 L. Ed. 1077, 7 Sup. Ct. 1132.

It is true that the pledgee may not deny the pledgor's title, but he may show that another was the real pledgor and *then,* if he can, show that other to be the owner and entitled to possession; but it is manifest that if the bank by means of extrinsic evidence varies the statement in the note by proof of ownership in Swisher, the evidence can not stop there, but must go on to show all the rights and equities, with regard to the stock, between Swisher and Eaton. True, Swisher is not a party here and his rights can not be determined or affected; nevertheless, if the bank proposes to set up his rights as a reason why it should not surrender the collateral in accordance with the terms of the contract, it must go to the bottom of the matter, and must show that Swisher, and not Eaton, has a right to possession upon payment.

The effect of the decision of the court below is to say to the bank, "notwithstanding Swisher is not a party here, you may show what rights he has in the stock," and to say to Eaton, "because Swisher is not a party here, you may not show what rights he has in the stock"; and the court gave effect to the evidence favorable to the bank, that Swisher was the owner of the stock and deposited it, but not that favorable to Eaton that he was an accommodation maker and had settled with Swisher without credit for the note.

The evidence before us would justify a finding that Eaton was originally an accommodation maker, and the court, it would seem, was of that opinion, but, be that as it may, the evidence shows that whether Eaton was indebted to Swisher at the time the note was originally given (it was renewed several times) or not, yet, before suit was brought, all

matters between Swisher and Eaton were adjusted and paid without any credit to Eaton on account of the note.

This settlement was such as to make Eaton a surety, because he had, in effect, paid Swisher the amount of the note. He was, therefore, entitled, on the showing before us, to exoneration by Swisher and (*pro tanto*) by the stock.

If, then, we take the note as it stands, we find Eaton entitled, upon tender, to the surrender of the collateral; and if we take the theory that the note may be varied so as to show the actual right to the stock, we find Eaton still entitled, upon tender, to its possession; therefore, if the bank wanted to stand on its legal rights, its duty was to surrender the stock upon payment, if it wanted to abide by the equitable relations of Swisher and Eaton, under the evidence before us, it must still surrender the stock upon tender, and, if it wished to avoid possible double liability, it must take some action to determine those relations in court.

Defendant claimed that the bank had converted the stock by putting it in the name of its cashier as trustee. That is a common way of holding collateral and we do not think it amounts to a conversion, but the refusal on tender to deliver to one entitled to possession is evidence of and may constitute conversion.

The defendant in error has made the point that the plaintiff in error did not take exceptions to the ruling of the court upon objections to evidence varying the terms of the note in regard to the collateral. The court reserved its ruling until after argument and then and immediately after deciding the case, but before judgment, said, "Exceptions will be reserved to the defendant." This, immediately after what constitutes the only ruling of the court on the questions reserved, must be deemed a saving of exceptions to that ruling.

By the terms of the note, we think an attorney's fee can be allowed only as specified in the note, upon confession of judgment.

The judgment is reversed and new trial granted.

Garrigues, C. J., and Scott, J., concur.