## No. 10,472.

DAVIS, DIRECTOR GENERAL OF RAILROADS v. FRUITA MER-
CANTILE CO.

Decided December 3, 1923.

Action for damages for misdelivery of a carload of hay.
Judgment for plaintiff.

*Affirmed.*

1. COURTS—*Interstate Shipments.* The rights of parties concerned
   in interstate shipments, are to be determined under the federal
   laws, as interpreted by the Supreme Court of the United States.

2. RAILROADS—*Bill of Lading—Delivery of Goods.* A valid delivery
   of a shipment may be made by a carrier without the production
   of the order bill of lading, but in such a case the carrier acts
   at its peril.

3. *Bill of Lading—Negotiability.* Section 3 of the federal bills
   of lading act, defines an order bill of lading. Any nonnegotiable
   provision is void unless, upon its face and in writing, the
   shipper agrees thereto.

4. *Irregular Delivery of Shipment—Burden.* A railroad com-
   pany making an irregular delivery of a shipment has the
   burden of showing that the person to whom the goods were
   given, was lawfully entitled to their possession.

5. *Bill of Lading—Delivery of Goods.* A carrier is not justified
   in delivering a shipment, if the order bill of lading is not
   properly endorsed, or if it has information that the person
   demanding delivery is not entitled to possession.

6. *Bill of Lading—Endorsement.* Under section 33 of the federal
   bills of lading act, the delivery of an order bill of lading gives
   no right to enforce an endorsement, unless the transfer is for
   value, and there is an agreement to transfer the title.

7. *Change of Destination—Consignee.* A request for a change
   of destination of a shipment does not confer authority on the
   carrier to change the consignee, nor to change an order bill into
   a straight bill of lading.

8. ESTOPPEL—*Equitable.* An equitable estoppel is not good in favor
   of one whose conduct has not been influenced by it to his in-
   jury.

9. RAILROADS—*Delivery of Shipment—Bill of Lading.* A carrier is not obliged to demand the production of an order bill of lading before delivery of a shipment, but if it waives the production, delivery is made at its peril and risk.

*Error to the District Court of Mesa County, Hon. Thomas J. Black, Judge.*

Mr. E. N. CLARK, Mr. RALPH G. LINDSTROM, for plaintiff in error.

Messrs. MCMULLIN & STERNBERG, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE action is for damages against the representative of a carrier company for misdelivery, or failure to make proper delivery, of a shipment of a carload of hay. The hay was delivered by the plaintiff to the Denver & Rio Grande Railroad Company at Fruita, Colorado, March 4, 1918, as the initial carrier, to be transported to Fort Worth, Texas, the connecting carriers being the Missouri Pacific and the M. K. & T. Railroads. The shipment was on consignor's order bill of lading, with directions endorsed thereon to notify Harris Brothers Grain Company, the purchaser. The plaintiff drew a draft on the grain company for the invoice value of the hay, and, through its agent, The First Bank of Fruita, Colorado, sent the draft, with the bill of lading attached thereto, for collection to the Continental Bank of McKinney, Texas. The bill of lading was not then, or thereafter, endorsed by the plaintiff in blank or otherwise, and no one was ever authorized by it to endorse, negotiate or transfer it. On March 8, the Harris Brothers Grain Company telegraphed the plaintiff, that as it had to divert all hay from Fort Worth—the destination named in the bill of lading—to have the McKinney Continental Bank accept a new bill of lading showing diversion to other points in Texas. Plaintiff

wired the Continental Bank to accept a new bill of lading so that diversion to other points in Texas might be made. The Continental Bank delivered the unendorsed bill of lading in order to effect the diversion desired by the Grain Company as stated in its telegram.    No other communications passed between the plaintiff, the Continental Bank and the Harris Brothers Grain Company, except these two telegrams. . The grain company placed its own endorsement on the back of the bill of lading, unendorsed by the consignor or consignee named therein, and mailed or delivered it to the commercial agent of the Missouri Pacific Railroad Company, with the direction to divert the shipment from Fort Worth to Gregory, Texas, for delivery on straight consignment to Harris Brothers Grain Company, as consignee at Gregory.    Pursuant to the request made on this commercial agent, the shipment was, on April 9, by one Rigdon, agent of the M. K. & T. Railroad, changed to the Harris Brothers Grain Company at Gregory.    The original bill of lading was not taken up, and no new or additional bill of lading was issued, but Rigdon wrote on the face of the original bill the following:    "Changed to Gregory, Tex.    Open Harris Brothers Grain Company, R. W. Rigdon, Dallas, 4/9/18".

This made it a straight bill.    Thereafter the bill of lading was returned to Harris Brothers Grain Company, and by it returned to the Continental Bank, and still later the draft and bill were returned to the First Bank of Fruita, May 7, 1918.    The draft was never paid by Harris Brothers Grain Company, nor has plaintiff ever been paid for the hay.    The shipment reached Gregory, Texas, April 23, and was delivered by the railroad company there, on that date, to the Harris Brothers Grain Company, without asking for, or taking up, the original bill of lading. Neither the commercial agent of the Missouri Pacific nor Rigdon, the agent of the M. K. & T. Railroad, connecting carriers, had any knowledge or information of the contents of the telegraphic correspondence hereinabove set forth, at the time the original bill of lading was presented

by the Harris Brothers Grain Company for diversion, or when the hay was delivered to the Harris Company at Gregory. Included in this bill was the following: "The surrender of this original order bill of lading properly indorsed shall be required before the delivery of the property." Upon this state of facts the trial court found for the plaintiff and rendered judgment for the value of the hay; to review which this writ of error is being prosecuted by the defendant.

The question for decision is: Was the carrier justified in making delivery of the hay on straight consignment to the Harris Brothers Grain Company, having no knowledge of the contents of the telegraphic correspondence and acting only on the fact that the Company had in its possession the original bill of lading, for which it paid nothing, which was not endorsed by the shipper in blank or otherwise, the grain company not being the consignor or consignee and not being the owner of the hay? Still further condensed, and otherwise phrased, the question is, was the Harris Brothers Grain Company, having physical possession of an unendorsed bill of lading, under the facts stipulated, lawfully entitled to the possession of the hay?

The plaintiff in error, defendant below, has filed an opening and reply brief exhaustively discussing the law applicable to bills of lading of an interstate shipment before and after the passage of the bills of lading statute, commonly known as the Pomerene Act. The object of this discussion, we take it to be, is to advise the court that before the passage of this act, open bills of lading were not attended by all the consequences, or subject to all the rules, of negotiable instruments, while the object of the Pomerene Act was to make them, in legal effect, as much like negotiable instruments as the nature of the transaction thereby evidenced is susceptible of. As the shipment in question is an interstate shipment, the rights of the parties are to be determined under this federal act, as interpreted by the Supreme Court of the United States. It is our duty to conform to decisions of that tribunal con-

struing the act. If the legal question here involved has been determined by it, we should readily follow it, even if our own previous decisions or our independent judgment were to the contrary.

To simplify the issues and the discussion, the defendant, in his opening brief, concedes: "1.  That defendant as initial carrier in operation of the Denver & Rio Grande Railroad is liable if the diversion constituted misdelivery. 2.  That for the purpose of the transportation contemplated by the original bill of lading, the diversion constituted delivery. 3.  That if under the circumstances of diversion, there was misdelivery, such misdelivery was conversion of the shipment."

Learned counsel for both parties say that this leaves for consideration merely the issue of whether or not, in the circumstances surrounding the diversion, there was a misdelivery of the shipment.

That an order bill of lading under the Pomerene Act is a document possessing substantially the same attributes of negotiability as commercial paper is admitted by both parties.  The defendant says that in the practical operation of common carriers, and in making delivery of shipments under order bills of lading, perhaps in a majority of instances, the carrier delivers without the production of the bill of lading endorsed or unendorsed.  That may be true, and that circumstance may have due weight with the courts in determining such questions as are now before us.  The rights of the parties, however, in the final analysis, are measured by the statute law and, so far as this court is concerned, by the decisions of the Supreme Court of the United States interpreting the same.  The provision in order bills that their surrender, properly endorsed, shall be required before delivery of the property, is for the benefit both of the shipper and the carrier.  A valid delivery may be made by the carrier without a production of the bill, but in such a case the carrier acts at its peril.  The provisions of the Pomerene Act which are material here, are sections 8, 9, 10, 22, 27, 28, 29, 30, 31

and 33, which may be found in' United States Compiled Statutes, 1916, vol. 8, chapter B, entitled: "Bills of Lading."

Defendant contends that before the Pomerene Act was passed, under the weight of authority, the delivery of this bill of lading to the Harris Brothers Grain Company was justified. This court, in *Florence & C. C. R. R. Co. v. Jensen,* 48 Colo. 28, 108 Pac. 974, and the Court of Appeals in *Rocky Mountain Fuel Co.· v. Sparling Coal Co.,* 26 Colo. App. 260, 143 Pac. 815, have decided to the contrary. See also the French & Company Case, *infra.* If the doctrine now is different, it is because the Pomerene Act, as construed by the ultimate authority, makes it so, and upon this specific inquiry we now enter.

Under this act there is the same substantial distinction between a straight bill of lading and an order bill of lading as' there was before it became a law. Section 3 of the act defines an order bill of lading. Any nonnegotiable provision therein is void unless, upon its face and in writing, the shipper agrees thereto. Sections 9 and 10 seem to be the ones upon which the decision of this case must be made. They read:

"Section 9. Persons to whom carrier may deliver goods.

A carrier is justified, subject to the provisions of the three following sections, in delivering goods to one who is—

(a) A person lawfully entitled to the possession of the goods, or

(b) The consignee named in a straight bill for the goods, or

(c) A person in possession of an order bill for the goods, by the terms of which the goods are deliverable to his order; or which has been indorsed to him, or in blank by the consignee, or by the mediate or immediate indorsee of the consignee."

"Section 10. Liability of carrier in case of delivery of goods to improper person.

Where a carrier delivers goods to one who is not law-

fully entitled to the possession of them, the carrier shall be liable to anyone having a right of property or possession in the goods if he delivered the goods otherwise than as authorized by subdivisions (b) and (c) of the preceding section; and, though he delivered the goods as authorized by either of said subdivisions, he shall be so liable if prior to such delivery he—

(a) Had been requested, by or on behalf of a person having a right of property or possession in the goods, not to make such delivery, or

(b) Had information at the time of the delivery that it was to a person not lawfully entitled to the possession of the goods.

Such request or information, to be effective within the meaning of this section, must be given to an officer or agent of the carrier, the actual or apparent scope of whose duties includes action upon such a request or information, and must be given in time to enable the officer or agent to whom it is given, acting with reasonable diligence, to stop delivery of the goods."

Construing these two sections together we say that, unless the Harris Brothers Grain Company was lawfully entitled to the possession of the hay under the facts hereinabove recited, the initial carrier is liable to the plaintiff for its value, because the delivery was otherwise than as provided in subdivisions "b" and "c" of section 9. The burden of proof, therefore, is upon the defendant to show that the grain company was lawfully entitled to possession of the hay at the time the connecting carrier, through its agent, diverted the same from Fort Worth, or when delivered at Gregory, Texas. The defendant says that, under the decision of the Supreme Court of the United States in *Pere Marquette Ry. Co. v. French & Company,* 254 U. S. 538, 41 Sup. Ct. 195, 65 L. Ed. 391, this diversion at Fort Worth, Texas, by Rigdon, made at the request of the grain company, which held the unendorsed bill of lading, constituted a delivery which fully discharged and satisfied the obligations assumed by the carrier thereun-

der. We have examined this, as well as other cases cited by the defendant. None of the other cases cited are in point, under the facts of this case, and we do not believe that the French Case is applicable to the state of facts now before us. The decision in the French Case is thus concisely stated in the syllabus:

"Under the Uniform Bills of Lading Act, a carrier *is* justified in delivering the goods to the person in physical possession of the order bill of lading properly endorsed, unless it has information that such person is not lawfully entitled to them."

In the French Case the order bill of lading was in possession of the purchaser, properly endorsed by the consignee in blank, and so the holder came clearly within subdivision "c" of section 9. The court in its opinion said:

"When in the interests of commerce the Federal Uniform Bills of Lading Act, (the Pomerene Act), extended to bills of lading certain characteristics of negotiable paper in order to protect a *bona fide* purchaser of such bills, it was deemed proper to afford also certain protection to the carrier. This was done, in part, by providing in § 9 that the carrier would be justified in making delivery to any person in possession of an order bill of lading duly endorsed, with certain exceptions to be noted below."

The court also said:

"Under § 9 it is physical possession of the bill which is made a justification for delivery of the goods by the carrier. Under that section it is immaterial in what capacity the person holds possession of the bill, and also whether he holds it lawfully or unlawfully, so long as the carrier has no notice of any infirmity of title."

"The only exception to the rule justifying the carrier in making delivery to one in possession of an order bill of lading endorsed in blank, which is urged as applicable here, is where the carrier has information that the person in possession of the bill is not lawfully entitled to the goods."

The converse is necessarily true, that the carrier is not

justified if the bill is not properly endorsed, or if the carrier then has information that the person demanding delivery is not lawfully entitled to possession. These quotations are made to show upon what ground the decision of the court in the French Case proceeded. The court several times repeats, as if by way of emphasis, that the order bill of lading in that case was endorsed in blank by the consignee, which, of course, brings the case clearly within the purview of subdivision "c", section 9. There is nothing in the opinion or in the statement of the facts in the French Case that indicates that the decision of the Supreme Court would have been as it was, unless the order bill of lading was properly endorsed. Until that court otherwise decides, we shall hold that the rule laid down in the French Case, and with the exception in that opinion noted, is applicable only where the order bill of lading is properly endorsed, and not to an unendorsed bill of lading to which is attached a draft by a consignor indicating to the carrier that delivery is to be made only upon the payment of the draft by the purchaser who holds physical possession of the bill.

The defendant, however, further contends that delivery, both at Fort Worth and at Gregory, was made without any information possessed by the carrier at the time, that the grain company was not lawfully entitled to possession of the hay, whereas, if it had such information, it concedes that delivery was not justified. Defendant says that since, by section 29 of the Pomerene Act, a bill may be transferred by the holder by delivery, accompanied by an agreement, express or implied, to transfer the title of the bill for the goods represented thereby, and by section 33, when such a "bill is transferred for value by delivery, and the indorsement of the transferor is essential for negotiation, the transferee acquires a right against the transferor to compel him to indorse the bill, unless a contrary intention appears," the facts of this case prove that there was an intention to, and in fact, there was a transfer by the plaintiff, through its agent, by de-

livery, without endorsing the bill, when the Continental Bank, as the agent of the plaintiff, delivered it to the grain company to have the diversion made from Fort Worth to Gregory, Texas.   We do not think so.   It is questionable whether section 29 extends to an order bill of lading.   The only specific bill designated therein is a straight bill.   But if an order bill is within its purview, as well as within the purview of section 33, it is where the transfer is for value and where there is an agreement, either express or implied, to transfer the title.   There is not a particle of evidence of such transfer.   Indeed, the evidence is to the contrary, and that the plaintiff did not intend to, and did not, transfer the title, and the grain company did not intend to buy, or to receive the title, and there is no agreement, express or implied, to such effect. The fact that the grain company returned the bill to the Continental Bank is itself sufficient evidence to show there was no change of title.   The burden is upon the defendant in these respects, and it has not sustained it.

In complying with the request of the grain company for a diversion of the shipment, the plaintiff authorized the Continental Bank, which held for collection the bill of lading with the draft attached, to secure a diversion, which the bank did by delivering possession of the order bill, unendorsed, to the grain company, which, in turn, made the request of the connecting carrier.   The carrier did not take up the bill and issue a new one, but made the notation for the diversion, and, in connection therewith, used the language which changed the consignee.   Therefore, defendant says the damage to plaintiff was caused by its own act in delivering, through its agent, this bill, and thus enabling that agent by its wrongful conduct to change the consignee, to plaintiff's injury.   Defendant also says that change of diversion could only be had on surrender of the bill.   It is to be remembered that the connecting carriers were not aware of the telegraphic correspondence. The only information or knowledge they possessed of the contract of the parties was from the unendorsed bill of lad-

ing with the attached draft. They knew therefrom that
the contract between the initial carrier and the shipper
was that the transportation was to be made to Fort Worth,
and, by the request for a diversion, changed to Gregory.
The only request, so far as the record shows, was for a
diversion of the shipment, and not a change in the con-
signee. The information, from the face of the unendorsed
order bill of lading to the connecting carrier was that the
shipment was made to the order of the consignor and the
hay was to be delivered to the grain company only on the
payment of the draft. That was the contract of the par-
ties. The request for the change in destination did not
include a change of the consignee, and when the agent of
the connecting carrier, of his own volition and not being
so instructed by plaintiff, placed upon the order bill an
endorsement which changed it into a straight bill, he not
only did so without the request of the shipper, or its agent,
but wrongfully did so because it was a change of the con-
tract by one of the parties thereto without the consent
of the other. The carrier, therefore, had information that
delivery to the grain company was not to be made until
the draft was paid, and the carrier knew that the grain
company was not entitled to possession of the hay until
it paid the draft. In other words, this agent of the car-
rier must have known that he had no right, upon the mere
production of an unendorsed order bill of lading, in con-
nection with a request for a change of destination, to
change the contract so that the proposed purchaser could
get possession of the goods before paying the draft. In
other words, to change an order bill into a straight bill.
This is so because such a delivery, if such it was at Fort
Worth, was made otherwise than as provided for in sub-
divisions "b" and "c" of section 9, and in contravention
of subdivision "b" of section 10.

A further contention of the defendant is that, even con-
ceding that the agent of the connecting carrier was not
justified in changing the order bill into a straight bill,
still the plaintiff was in possession, through its agent, the

Continental Bank, of this original bill of lading with the improper notation upon it, for several days before final delivery was made at Gregory, Texas, to the grain company without the production of the original bill. An equitable estoppel is not good in favor of one whose conduct has not been influenced by it to his injury. There is no evidence that this nonaction on the part of the Continental Bank to notify the carrier at Gregory that the bill of lading had been improperly changed as to the consignee, in the slightest degree contributed to, or caused the delivery of the hay to the grain company. That carrier made the delivery of the goods without requiring a production of the original bill of lading properly endorsed by the plaintiff consignee in blank. It might, and, in the circumstances, should, have demanded the production of the order bill before delivery to the grain company. It was not obliged to do so, but if it waived the production of the bill, as it did, and delivered to the grain company upon the belief that there was a transfer of the bill to the company, or that the bill was in its possession, or that it was lawfully entitled to possession of the hay, the delivery was made at the peril and risk of the carrier. The alleged equitable estoppel of the plaintiff to assert its rights under the original bill, after it knew of the notation that changed it into a straight bill, is balanced, to say the least, by the failure of the agent of the carrier at Gregory to insist upon the production of the original bill properly endorsed, before making final delivery to the person who was not lawfully entitled to the possession of the goods. For, not knowing of the conversion of the order bill into a straight bill by the agent Rigdon, the carrier at Gregory had no reason for acting on the supposition that the grain company either had the bill in its possession, or that the bill had been transferred to it, or that it was entitled to possession of the shipment. Aside from this, the carrier had the right, even had it known of the attempted change of consignee, to protect itself by requiring production of the bill, an inspection of which would

have disclosed that the grain company's right of possession depended upon an unfulfilled condition of payment.

We think the judgment of the trial court was right and it is affirmed.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE TELLER, and MR. JUSTICE SHEAFOR concur.