## No. 12,487.

## MOISE BROTHERS COMPANY, INC. *v.* JAMISON.
### (1 P. [2d] 925)

Decided June 29, 1931.

Messrs. GRANT, ELLIS, SHAFROTH & TOLL, Mr. WILL SHAFROTH, for plaintiff in error.

Messrs. GILLETTE & CLARK, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court, hence we refer to them as plaintiff and defendant, or as Moise Brothers and Jamison.

The complaint contained two causes of action, the first on a draft, the second on an agreement to dismiss a suit according to which agreement said draft was delivered. Each was for the sum of $1,240.80 and involved the same transaction. In no event could recovery be had on both. The draft was drawn on defendant by his agent Burlingame and in favor of plaintiff. Six defenses were set up in the answer, including want of facts, absence of authority to draw the draft, want of consideration therefor, delivery under threats and duress, and others. Issue was joined thereon by replication. The cause was tried to the court, without a jury, and to review a judgment in favor of defendant for costs this writ is prosecuted.

Jamison is a Denver cattle dealer and Moise Brothers a New Mexico corporation operating a ranch at Santa Rosa in that state. By written contract, whose validity is unquestioned, and hereinafter referred to as A, dated May 3, 1922, the former bought of the latter 610 steers of specified ages and at prices therein fixed. These animals were to be delivered at Santa Rosa, were to be

"good American cattle, smooth, well grown, full ages on or before July 1, 1922, * * * delivered, free of all expense" to Jamison * * * at Santa Rosa "exclusive of" certain defective and undesirable animals, "and all such cattle may be rejected by the party of the second part [Jamison], after which the party of the second part shall have the option to reject and exclude from delivery not to exceed ten per cent of the cattle then remaining for delivery * * *.

"Payments to be made as follows: Draft payable at the First National Bank, Magdalena, New Mexico, which draft party of the first part agrees to accept, and said party of the second part agrees to pay same on presentation when drawn by duly authorized officer or agent.

"Said party of the first part hereby acknowledges receipt from the party of the second part the sum of $1700, being at the rate of $2.80 per head on 610 head of cattle, which amount is a credit on the purchase price of said cattle, and is to be allowed in final settlement under this contract; and this amount, in the event of failure of the party of the second part to accept and pay for said cattle when properly delivered by the said party of the first part, shall be forfeited to the party of the first part in full satisfaction and settlement of this contract as liquidated damages.

"In the event of failure of the party of the first part to fill this contract, said party of the first part shall pay to the party of the second part in cash at the rate of $2.80 per head for all cattle short on this contract together with liquidated damages and also return to the party of the second part the pro rata per head advanced money this day paid to the party of the first part on all cattle short of the number herein contracted, together with interest at the rate of eight per cent. per annum on the advance payment until repaid; payment to be made to the party of the second part immediately on settlement of this contract."

Sample animals were shown defendant's agents prior

to the execution of A. These agents went to Santa Rosa, inspected plaintiff's herd, found few if any animals therein which met the requirements of A, dickered and quarreled with Moise Brothers, offered to take 39 head, were urged to accept 200, and finally cut and accepted 174. Burlingame, one of these agents, thereupon delivered to plaintiff a draft for $1,813.20, which, plus said cash advance of $1,700, and plus $2.80 per head for 436 head sold but not delivered, made up the agreed price of the 174 so accepted, i. e., $4,754. This penalty of $2.80 per head for animals bought but not delivered, i. e., $1,240.80, is the sum here in controversy. Plaintiff accepted said draft for $1,813.20, deposited it in their bank for collection, and it was presented to and paid by Jamison in Denver May 25, 1922. Burlingame started for Denver with said 174 head of cattle. When he reached Tucumcari, N. M., some 60 miles from Santa Rosa, he encountered, or was threatened with, a replevin suit by plaintiff. The cattle accepted were then there on board cars in transit. After some talk with a deputy sheriff, the station agent at Tucumcari, one of the Moise brothers and his attorney, and by telephone with Jamison in Colorado, Burlingame gave the questioned draft for $1,240.80. There is no evidence that Jamison authorized this unless by general authority or under the terms of A. Burlingame delivered the draft with the statement, "Mr. Moise, I am giving you that under protest." Plaintiff's complaint and so-called affidavit in the Tucumcari replevin suit both recited that Moise Brothers own and were entitled to the possession of the animals then in transit, though they then retained, and still retain, and have never offered to return, the $1,700 cash or the $1,813.20 paid by draft. They now maintain that the draft in suit was given in settlement of the replevin case. The affidavit therein is signed by plaintiff's attorney, but bears no certificate of the officer. Jamison was not named in that suit. That there was in fact a replevin suit, or that it was settled by the questioned draft, are denied herein.

Jamison refused payment of the Tucumcari draft and more than a month thereafter the replevin suit was dismissed by plaintiff's attorney. Plaintiff made no further attempt to collect until it filed this action May 21, 1928, one day before the bar of the statute of limitations.

■ There are 42 assignments of error, most of which go to specific findings of the court. The abstract discloses but a general finding. This, however, is equivalent to a special finding in favor of defendant on every disputed fact. *Davis v. Larson,* 76 Colo. 527, 233 Pac. 160; *Tritch Hardware Co. v. Donovan,* 74 Colo. 350, 221 Pac. 881.

■ Counsel for plaintiff insist that there is no substantial conflict in the evidence and that all these findings are of law. We are unable to agree with this contention. When one view of the evidence would not support the court's conclusion of law and another would, we must assume that the latter was adopted because all presumptions are in favor of the judgment. *Boldt v. Motor Co.,* 74 Colo. 55, 218 Pac. 743.

In the view we take of this case but two questions are presented: (1) Is any amount due plaintiff under A? (2) Was there any consideration for the questioned draft?

■ 1. We must presume that in accepting 174 steers at Santa Rosa, Burlingame was acting under A, and that this was known to plaintiff. There is nothing to indicate the agent's authority to make this purchase for his principal outside this contract, and no suggestion that Moise Brothers had any right to believe, or did believe, that he could do so, or that he was making any such attempt or pretense. We must therefore assume that, indulging every presumption in favor of plaintiff, it was short 436 head of cattle under its contract and that defendant was clearly entitled to a penalty of $2.80 per head by reason thereof. That this penalty was not discussed before the cattle were loaded, and that when it was discussed at the bank where the $1,813.20 draft was drawn, Moise said,

"You can't have the cattle," is wholly immaterial. The contract specifically and unequivocally covered the transaction as it was carried out. Defendant owned, and his agent was in legal possession for him thereunder, 174 head of cattle. Plaintiff retained the cash payment and retained the last mentioned draft. In view of admitted facts, and the findings of the trial court on facts in dispute, it is impossible that there could be any recovery under the terms of A.

■ 2. In considering whether plaintiff can recover on the draft, we eliminate the most troublesome questions and reach the heart of the controversy by assuming that this draft is a promissory note given under identical circumstances by Jamison himself. There being no question of the rights of an innocent holder, plaintiff cannot recover if the paper was given without consideration. §3845, p. 1125, C. L. 1921.

■ The trial court finds no consideration. Does the evidence support that finding? That it does is beyond question unless, as contended by counsel for Moise Brothers, the Tucumcari transaction constitutes consideration. Not only are we of the opinion that there is evidence to justify the finding of the trial court in relation to that transaction, but we think it could not reasonably have found otherwise. Putting Jamison in the shoes of his agent, we find him temporarily at Tucumcari, New Mexico, where he has in his possession on board cars in transit 174 cattle bought under written contract and fully paid for. An officer meets him with an alleged writ, and threatens to take possession of his property thereunder (in fact, he probably did so) and thus delay and greatly damage him. The threatened suit is without a shadow of right. Recovery for the impending damage is doubtful. The affidavit in replevin is unverified and there is no justification on the bond. Defendant is not even named in the transaction. The threat is accompanied with a claim of ownership and right of possession in plaintiff contrary to every provision of the executed con-

tract. There is no offer to return any portion of the purchase price. If there has not been the clearest violation of this contract on the part of plaintiff it is entitled to damages against defendant for his refusal to take the remaining 436 animals as agreed. It has never made any such claim. It proposes to waive this seizure only in the event of an additional payment to it of $1,240.80. Under such circumstances Jamison executes and delivers his promissory note for this amount with the specific statement that he does so under protest. Later he refuses to pay and the holder brings suit. His only hope of recovery is to show that this note was given in compromise of a dispute, or in settlement of litigation. If the dispute was trumped up, or the litigation merely vexatious, any judgment in plaintiff's favor would be but the court's seal of approval on a piece of extortion. Since plaintiff had no valid claim and no reason for thinking it had, all prima facie presumptions are against it. Has it overcome these? Quite the contrary. Thirty days after Jamison had refused payment, thus repudiating the alleged settlement, plaintiff dismissed its New Mexico suit, and although this paper, calling for the substantial sum of $1,240.80, had been dishonored and repudiated by Jamison, plaintiff made no further claim thereon, no claim for damages under its contract, no tender of any sums received by it, and took no action whatever, for a period of six years, and then only one day before the running of the statute of limitations. We think this Tucumcari suit bears internal evidence of bad faith, that the unexplained conduct of the plaintiff is a confession of it, and that the finding of the trial court of no consideration is overwhelmingly supported by the evidence.

In this jurisdiction contracts made under duress of goods are without consideration and void. "It seems to be well settled that where a party has possession or control of the property of another, and refuses to surrender it to the control and use of the owner, except upon compliance with an unlawful demand, a contract made or

money paid by the owner under such circumstances to emancipate the property is to be regarded as made under compulsion." *Adams v. Schiffer,* 11 Colo. 15, 30, 17 Pac. 21, 29.

By the overwhelming weight of authority the element indispensable to support a claim such as plaintiff here makes is good faith. If we consider this draft as given merely in settlement of a dispute, then plaintiff must fail because its claim was wholly without foundation. 12 C. J., p. 332, §20.

If we say the draft was given as a consideration for staying, discontinuing, or dismissing litigation, still plaintiff cannot recover, because it knew it had no cause of action. 13 C. J., p. 350, §204.

For the reasons given the judgment is affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE BUTLER and MR. JUSTICE MOORE concur.