# No. 15,490.

WHEELOCK BROS., INC. *v*. BANKERS WAREHOUSE
COMPANY ET AL.

(171 P. [2d] 405)

Decided July 1, 1946.   Rehearing denied July 22, 1946.

Mr. TRUMAN A. STOCKTON, JR., for plaintiff in error.

Mr. DAVID ROSNER, for defendants in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

PLAINTIFF, plaintiff in error here, as a common carrier, received and carried to Denver 480 boxes of alcoholic liquors. The freight bill disclosed that it was shipped by Hiram Walker & Sons, Inc., consigned to "order of Hiram Walker & Sons, Inc., notify Liquors,

Inc., 1608 Market Street, Denver, Colo.," and bore the further notation, "Deliver only on surrender of original bill of lading properly endorsed." Liquors, Inc. was notified of the arrival of the liquor but failed to take up and surrender the bill of lading which had been sent to a Denver bank with draft attached. Liquors, Inc. was indebted to plaintiff from prior dealings. Neither plaintiff nor Hiram Walker had warehouse facilities for the liquor, and after holding it over to the next day, in the hope that Liquors, Inc. would take up the bill of lading, plaintiff stored the liquor at the warehouse of defendant company. That warehouse was selected at the request of Liquors, Inc. Plaintiff's truck driver took duplicate copies of the freight bill to the warehouse; on one copy defendant signed receipt for the boxes of liquors and the other copy it retained. Defendant issued no warehouse receipt or other evidence of storage except by receipt on the copy of freight bill above mentioned. Thereafter, plaintiff learned that defendant had permitted Liquors, Inc. to remove the greater part of the liquors and demanded possession of the balance remaining in the warehouse. This demand was refused except on condition that plaintiff execute a release of the defendant from "any and all claims whatsoever in connection with this entire transaction." Such release was thereupon given and the remaining cases redelivered to plaintiff. This action was instituted against the warehouseman for conversion of the liquor. Defendant answered, admitting receipt of the goods from plaintiff in the usual course of its warehouse business, but denying conversion and alleging that plaintiff delivered the liquors to Liquors, Inc., and deposited the same at the defendant's warehouse for storage, at the request and for the account of said Liquors, Inc., and that under the instructions and delivery made by plaintiff, Liquors, Inc. was the owner and entitled to the possession of said shipment. It further pleaded in bar the written release exacted upon redelivery of a portion of the liquor. Upon

trial to the court judgment was entered in favor of defendant for its costs.

By its answer, defendant warehouseman admitted receipt of the liquors and set up ownership and right of possession in another, to wit: Liquors, Inc. Hiram Walker & Sons, Inc., having shipped the liquors consigned to the order of itself with instructions to deliver only on surrender of the original bill of lading properly endorsed, remained at all times the true owner of the liquor and entitled to its possession until the draft accompanying the bill of lading was paid and the bill surrendered. There is no plea, proof or suggestion that Liquors, Inc. had at any time taken up the draft and surrendered the bill of lading and no evidence whatever that it was the owner or entitled to the possession of said shipment as alleged by defendant in its tendered issue to plaintiff's action.

However, "a valid delivery may be made by the carrier without a production of the bill, but in such a case the carrier acts at its peril," *Davis v. Fruita Co.*, 74 Colo. 247, 220 Pac. 983, and defendant contends that such delivery was made by plaintiff to Liquors, Inc. when the goods were left at its warehouse for storage. Plaintiff contends that the goods were placed in storage by it under its duty as a carrier of merchandise of which it was unable to make delivery and that defendant had notice of the failure of Liquors, Inc. to pay for the goods and instruction by plaintiff not to release the goods to Liquors, Inc. If the plaintiff instructed defendant to receive and store the goods for Liquors, Inc., or delivered them under such circumstances as to give defendant reasonable ground to believe that plaintiff intended that the goods be held for Liquors, Inc., and defendant released said goods to Liquors, Inc. in good faith, without knowledge or information that plaintiff intended to hold the goods until payment, that constitutes a defense to plaintiff's action.

Defendant having admitted the receipt of the

goods from plaintiff in the usual course of its warehouse business, the burden of going forward with the evidence was on defendant to justify delivery to one other than plaintiff, the bailor. "While the authorities are in conflict, the greater weight thereof and the better reason place the duty upon the bailee to satisfactorily explain the non-delivery of the thing bailed, or its delivery in an injured condition such as only culpable carelessness would probably have caused." *Nutt v. Davison,* 54 Colo. 586, 131 Pac. 390. "Warehousemen are not only responsible for losses which arise by their negligence, but also for losses occasioned by the innocent mistake of themselves and of their servants, in making a delivery of the goods to a person not entitled to them. For it is a part of their duty to retain the goods until they are demanded by the true owner; and if by mistake they deliver the goods to a wrong person, they will be responsible for the loss as upon a wrongful conversion." Story on Bailments (8th ed.), p. 387, §450. "The failure to make a delivery upon a proper demand creates a presumption that the warehouseman has failed to take proper care of the property, requiring him to present some excuse for his failure to deliver." 27 R.C.L., p. 984, §41. "If [plaintiff bailor] Mortimore sold the cotton named in his receipts to Wilder & Co. absolutely and unconditionally, but did not deliver to them the receipts properly indorsed, and in this condition of things the defendant [warehouseman] delivered the cotton to Wilder & Co., such delivery was legal, notwithstanding the receipts were not taken up by him and were not indorsed to Wilder & Co., for that was a delivery to the true owner. *But the burden of establishing the right of Wilder & Co. so to receive the cotton was upon the defendant."* *Mortimore v. Ragsdale,* 62 Miss. 86, 96. (Italics ours.) Under our warehouse statute, '35 C.S.A., chapter 173, section 8, a warehouseman, in the absence of some lawful excuse as specified in the act, "is bound to deliver the goods upon a demand made either by the holder of

a receipt for the goods or by the depositor," and upon failure "the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

On this issue the testimony is meager. Apparently the only persons present at the time of delivery were plaintiff's driver and defendant's employee Julian. The former did not testify and the latter stated that he received the shipment from Wheelock Brothers and signed the receipt on the freight bill; that he was receiving it for the Bankers Warehouse, and that he stored it in the storage space of Liquors, Inc., because he got that impression from his conversation with the driver. He testified, "Well, as far as I can remember, he mentioned he had a load of liquor for Liquors, Incorporated. Q. Is that what he said? A. Well, it has been over a year ago— * * *. Q. But I want to know what this truck driver said at this time about this load of liquor. What did he say? A. Well, I couldn't say positively. The only thing I can say is I think he said— Q. That is your best recollection, that that is what he said? A. That would be the only thing I can tell you that he could have said." This is the only testimony as to the receipt of the goods in storage or instructions given in that connection and it has slight probative force.

There is no plea nor proof that Liquors, Inc. made demand upon defendant for the goods or made any claim of title to them; only that defendant voluntarily stored the goods with the other goods stored for Liquors, Inc. in the belief that they belonged there. This is not a defense, unless such belief was justified by plaintiff's instructions or conduct. " 'The relation between bailor and bailee, and that of depositor and depositary of money, is analogous to that of landlord and tenant. Until something equivalent to title paramount has been asserted against the bailee or depositary he will be estopped to deny the title of his bailor to the goods intrusted to him.—Bigelow on Estoppel (4th ed.)

490.'" *Jensen v. Eagle Ore Co.*, 47 Colo. 306, 107 Pac. 259.

█ The bailor and depositor of the goods was plaintiff. There can be no mistake as to that, and none is urged. The goods were delivered in plaintiff's truck and by plaintiff's driver and the receipt given for them by defendant was a receipt to plaintiff on its regular printed form of freight bill, bearing its name plainly printed. "The bailee is bound, at his peril in case he delivers the property to one other than the bailor, to determine the right of such person to receive it, and as a general rule the only surrender he can rightfully make of the property is on the order of the bailor, express or reasonably implied." 6 Am. Jur., pp. 298, 299, §210. Even had instruction by the driver to store for Liquors, Inc. been shown, it would not have established defendant's defense, for a truck driver has no implied authority to act as agent of his master in authorizing delivery of goods to a third person, and no proof of such agency was made in this case.

██ Any question of uncertainty as to the party for whom the goods were held patently arose from the fact that no warehouse receipt was issued to cover this merchandise, and considerable emphasis was placed by counsel for defendant, both in examination of witnesses and in argument, upon the asserted negligence of plaintiff in failing to obtain such a receipt. In fact, the warehouseman is under obligation to deliver a receipt, and the negligence in not so doing is his, at least equally with that of the bailor. In *Branch v. Bekins Van & Storage Co.*, 106 Cal. App. 623, 290 Pac. 146, the warehouseman's agent, who had authority from the owner for storage of the goods, received from her a signed memorandum, "Mail warehouse or shipping receipt" to a given address. The warehouseman failed to issue any warehouse receipt, the goods were stored in the name of plaintiff's husband and were attached on a claim against him. The court held the warehouseman liable,

saying: "The plaintiff was entitled to a warehouse receipt for the storage of her household goods. Apparently the appellant neglected to issue or deliver this receipt. Had this receipt been delivered, the property in the custody of the warehouseman would have been exempt from attachment. The appellant was negligent in failing to issue this receipt." See, also, *Kitchens v. Mann,* 16 Ala. App. 599, 80 So. 173. "Although a warehouse receipt is not essential to create a contract for storage, as a general rule a person who deposits goods with a warehouseman for storage is entitled to a receipt therefor, and there is a corresponding duty on the warehouseman, on request, to issue such receipt; and as a warehouse receipt does not take effect until its delivery, a failure to issue or deliver such receipt constitutes negligence on the part of the warehouseman for which he may be held liable for any loss occasioned thereby to the depositor." 67 C.J., pp. 463, 464, §33. "The fact that a warehouseman has not actually issued a warehouse receipt for goods destroyed, or has issued one not in the statutory form, does not relieve him from liability, where the goods have been received by him for storage and the owner is entitled to a receipt." 67 C.J., p. 501, §92.

Not only do we have this uncertain testimony as to the circumstances of delivery, but plaintiff's manager testified positively that he contacted Philip Milstein, defendant's manager, at the time the shipment was delivered and, as he recalled, again the next day, and instructed him not to deliver any merchandise until the bill of lading had been delivered to them and in their possession; that some three or four weeks later he learned that merchandise had been released and again instructed Philip Milstein that under any consideration he was not to release any more of the merchandise and that Milstein then informed him that they had nothing to worry about; that he had received certified checks to cover any portion of that shipment that had been released.

In contrast to the positive testimony of Mr. Merritt, plaintiff's manager, Philip Milstein stated in his deposition that he did not remember whether Mr. Merritt ever gave him instructions in any of their conversations not to release the liquor; that "It is possible. * * * I say it is possible, but still it is not, because he was dealing with Liquors, Inc." Milstein admitted that during the period while the liquor was held for storage, he received certified checks from Liquors, Inc., totaling approximately $1,493 in partial payment for loads of the liquor that were taken from the warehouse and delivered to Liquors, Inc., and that he later paid back the money by defendant's own checks. He was further interrogated and answered as follows: "Q. As I understand it, Mr. Milstein, these certified checks which were given to you by Liquors, Inc., were in the nature of partial payments for the amounts of liquor that were taken from this stock from time to time and delivered to Liquors, Inc.,—is that right? A. Yes; they were accumulating moneys for themselves and asking us to do so on this liquor. The money was for Liquors, Inc., held in a trustee bank account for them." Witness Milstein admitted that Liquors, Inc. had a bank account, and it is difficult to account for the latter's depositing money with the warehouse company upon removing liquor stored there if the liquor was held in storage for it, and this testimony is strongly corroborative of the statement of witness Merritt that when he called by telephone with reference to withdrawal of the goods by Liquors, Inc., Milstein told him that plaintiff had nothing to worry about; that he had received certified checks to cover any portion of the shipment that had been released.

The testimony further shows that when Merritt learned that defendant was continuing to release the liquors and demanded redelivery to plaintiff of the 134 cases of liquor still in storage, defendant raised no objection whatever on the ground that the goods belonged

to Liquors, Inc., but required plaintiff to give a full release of any claim plaintiff might have in order to get the remaining goods, and then redelivered 127 cases as all that were left.

In reviewing the entire record, we find no substantial evidence to support defendant's contention that the goods were delivered to Liquors, Inc. at its warehouse or that there was any basis of reason for a belief that the goods were there stored in its behalf.

Defendant further offered evidence, over objection of plaintiff, concerning the giving of a chattel mortgage by some third person to plaintiff in settlement of the account in behalf of Liquors, Inc. Such settlement was not pleaded and the undisputed evidence of plaintiff is that the tendered mortgage was incomplete and unsatisfactory and was not accepted.

As to the release signed by plaintiff as a condition to receiving back the liquor still in storage: Plaintiff as carrier had the right to its possession in behalf of the consignee Hiram Walker & Sons, Inc., and when plaintiff learned that it was being removed and made demand for its return, defendant was legally bound to return it. When, upon plaintiff's coming to get the remaining cases, defendant refused to give them up, except upon a full release, and plaintiff was compelled to execute such release in order to get the merchandise to which it was legally entitled, such release was without consideration and given under duress of goods. *Moise Bros. Co. v. Jamison,* 89 Colo. 278, 1 P. (2d) 925. Defendant is entitled to credit in the amount of the value of the cases of liquor so redelivered, but the release is no bar to recovery for the remainder.

Accordingly, the judgment of the court is reversed with instructions to enter judgment in favor of plaintiff in harmony herewith.

MR. CHIEF JUSTICE KNOUS and MR. JUSTICE HILLIARD dissent.