GARRETT FREIGHT LINES v. CORNWALL.

No. 7601.   Decided June 14, 1951.   (232 P. 2d 786.)

See 67 C. J., Warehousemen and Safe Depositaries, sec. 143. Order notify bill of lading, effect of. 9 Am. Jur., Carriers, sec. 555.

*Warwick C. Lamoreaux, David K. Watkiss,* Salt Lake City, for appellant.

*G. A. Marr, Irving H. Biele,* Salt Lake City, for respondent.

CROCKETT, Justice.

On May 22, 1947, the plaintiff, Garrett Freight Lines, as the terminal common carrier, transported from California to Salt Lake City a shipment of 25 barrels of dry ice cream mix having an agreed value of $1800. The original shipper, Golden State Company, Ltd., of Loleta, California, made the shipment under what is called an "Order Notify" bill of lading which required the carrier to see that a sight draft was honored and to pick up the bill of lading before delivering the merchandise. Garrett failed to do this, deposited the goods with the defendant warehouse, who in turn released to the "notify consignee" without payment being made. The latter proved insolvent and failed to pay. The shipper made demand on Garrett, which admitted its error, paid the shipper and now sues the defendant to recoup its loss.

The critical question in this case is: Could the warehouseman in accepting a shipment in an "order notify" transaction, assume without inquiry that the carrier has performed its duty and picked up the bill of lading? The trial court held that he could and denied recovery to the plaintiff, from which ruling plaintiff appeals.

Inasmuch as the problems in this law suit devolve upon the phrase "order notify" and the legal obligations it casts upon the parties concerned with this shipment, an explanation thereof is in order before continuing with the facts. The "Order" part of the phrase is for the benefit of the supplier who ships the goods, naming himself as consignee. It means that he retains title to and control of the goods until his demand or direction for payment is met, and that they are only to be delivered consistent with his order. The shipper sends the "Order Notify" bill of lading, with sight draft attached, to a bank at the destination where purchaser, the "Notify Consignee", resides. Under the terms of the bill of lading, before the carrier may make delivery, he must see that the sight draft is honored and pick up the bill of lading from the bank. The foregoing takes care of the "Order" part of the phrase. The "Notify" is for the benefit of the "Notify Consignee." It means that the carrier is to notify the consignee upon the arrival of the goods so that the latter can arrange payment or credit for the shipper. After the consignee has done so, the bill of lading is released to the carrier and the goods are then to be delivered to such consignee or others at his direction. The uses of this "Order Notify" arrangement for shipping merchandise and requiring payment before actual delivery are evident. For a fuller discussion of the necessity for, development and general use of this phrase in the transportation business, see Lust, the Law of Loss and Damage Claims, Third Edition, pages 193, et seq.

The evidence does not indicate when the goods arrived at Salt Lake City. We assume May 27, 1947, because on that date Garrett delivered the merchandise to the defendant warehouse, but did so without first following the requirement of picking up the "Order Notify" bill of lading. When Garrett's man delivered the merchandise to the Cornwall Warehouse, the only information furnished to it

was contained on Garrett's freight bill, the material portions of which are as follows:

Garrett Freightlines, Inc.
Main Office—Pocatello, Idaho
Order Notify

Bill No.
115085

Consignee:
Schramm Enterprises    Golden State Co. % Cornwall Whse    Salt Lake
315 So. Main    City, Utah

Shipper:    Point of origin
Routing: Intercity Transport / Golden State  Loleta, Calif.    Date
5/22/47

| No. Pkgs. | Description of Articles | Weight | Amount |
|---|---|---|---|
| 25 | Bbls Dry Ice Cream Mix | 5676 | |
| | | PREPAID | 109.90 |

(Signed—handwritten)
Delivered    Cornwall Whse
S. Moser
May 27, 1947

Garrett did not demand and the defendant did not give a regular warehouse receipt for the goods. There was no other receipt or acquittance given for the goods except the signature of Cornwall's agent as shown above. The contents of this freight bill was the only knowledge defendant had concerning the transaction up to that time. The defendant warehouse assumed that plaintiff had performed its duty and picked up the bill of lading and that the merchandise was delivered for the account of Schramm Enterprises. It issued warehouse receipts to the latter company, and permitted the merchandise to be withdrawn at its direction for delivery to various purchasers in the intermountain area. After the merchandise had thus been shipped out on orders of Schramm, the defendant learned on August 29, 1947, that Garrett had not picked up the bill of lading before delivering the merchandise to the defendant.

As recited above, the plaintiff Garrett admitted its error in failing to see that the sight draft was honored and pick

up the order bill of lading before delivering the merchandise, and paid $1800, the value of the merchandise, to the shipper, Golden State Company, Ltd. The plaintiff now seeks to hold the defendant warehouse for this loss, asserting that the words "Order Notify" on the freight bill was a warning to the defendant of the nature of the transaction and that the defendant was also obliged to take heed of this warning and not permit delivery to the Schramm Enterprises until the sight draft was honored and the bill of lading picked up. In support of this contention, plaintiff cites the following statement from the work of Lust referred to above, Vol. 3, pp. 193-4:

"13. Order Notify Shipments * * * A large part of the commerce of the country moves under what is known as order-notify bills of lading * * *. There has therefore grown up a branch of the law peculiarly applicable to order-notify bills of lading. The weight of authority is to the effect that an *order-notify shipment is notice to the carrier and to the world at large* that the seller reserves title to the goods and that he is the only person who can exercise dominion over the shipment until the bill of lading is released either by payment of the draft, or by the shipper waiving payment." (Italics added.)

It will be observed that this statement is made in discussing the "Order Notify" *bill of lading,* and of course refers to persons who would be concerned with it in the normal course of business. The defendant never saw the bill of lading in this case and, according to the evidence, would have no occasion to do so. A reading of the above text reveals no information concerning what, if any, notice might be imparted to a warehouseman by the words "Order Notify" on a freight bill. Nor does it deal with what a warehouseman may assume regarding the carrier having discharged its duty.

The defendant agrees that the "Order Notify" on the freight bill was notice of the kind of a transaction it was but says that it was no warning that the plaintiff had failed

to pick up the bill of lading and that it had the right to assume that the plaintiff had done so.

That seems to be the important point of inquiry. For its answer we must look to the evidence and the findings of the trial court as to the customary procedure in such transactions. The only testimony in the record concerning this matter was that of defendant himself, James H. Cornwall (since deceased), a man of 35 years' experience in the operation of his business. He testified in substance that he would never have occasion, in a transaction such as this one, to inquire whether the sight draft had been honored and the bill of lading had been picked up. The lower court believed this evidence and included in its findings:

"5. * * * defendant in receiving such merchandise for the account of Schramm Enterprises was entitled to assume and did assume that the plaintiff had in fact procured surrender of the bill of lading under which such merchandise was shipped, and that Schramm Enterprises was entitled to the receipt of such merchandise;

* * * * *

"7. * * * defendant was not informed until August 28, 1947, that the plaintiff had failed to pick up such bill of lading, * * * and prior to the 29th of August, 1947, upon orders from Schramm Enterprises defendant had delivered such merchandise to various persons, and that all such deliveries were made without knowledge or reason to believe that plaintiff had failed to secure surrender of the order notify bill of lading and were made in good faith and in reliance upon the fact that delivery of such merchandise had been made by plaintiff to Schramm Enterprises unconditionally."

Even if we were wont to do so, it would not be the prerogative of this court to disturb these findings. They are not merely erroneous conclusions of law as claimed by plaintiff. They are warranted by the facts and circumstances existing here. There is no doubt that ▪▪ the shipper intended that if the bill of lading had been picked up by the carrier Garrett, the merchandise was to be delivered to the defendant for the account of Schramm

Enterprises. That was the understanding that every one had with respect to this transaction, as is clearly indicated by the correspondence of the plaintiff Garrett. In remitting its check for $1800 to Golden State Company, Ltd., its letter stated in part:

"In payment of your claim on a shipment which moved on Garrett's freight bill No. 115085 dated May 22, 1947, to the Schramm Enterprises, Salt Lake City, c/o Cornwall Warehouse Company."

According to the findings of the trial court, in an ordinary transaction to the carrier Garrett would have picked up the bill of lading, deposited the goods in the warehouse to the account of the consignee (Schramm), and the warehouse would have had no knowledge of the actual fact concerning the payment of the draft and the picking up of the bill of lading except to assume that it had been done in the regular manner, just as defendant did in this case. The obligations of the bill of lading require the carrier to attend to the seller's "order" that the goods be paid for before delivery.

It does not seem unreasonable, where the plaintiff had admittedly failed in its own duty, to require that it pass on a definite warning to the defendant. If Garrett had wanted to warehouse the goods for its own account, it could have made plain that intention and have demanded a warehouse receipt to itself instead of merely leaving the goods under such circumstances that the defendant could reasonably and in good faith conclude, as it did, that the transaction was an ordinary one of receiving a shipment for the Schramm Enterprises.

There is another reason sustaining the court in its refusal to find that the plaintiff warehoused the merchandise to its own account. Under the terms of the bill of lading, the plaintiff would have had no right to warehouse the goods to its own account until certain allowed "free time" after arrival had elapsed. Whether this had elapsed was not made known to the defendant, and no

evidence was produced at the trial concerning the matter. It was therefore impossible for the trial court to determine, and we are unable to tell, whether the plaintiff actually could have warehoused the goods to its own account, as it claims.

The plaintiff places considerable reliance upon the case of *Wheelock Bros., Inc.* v. *Bankers Warehouse Co.*, 115 Colo. 197, 171 P. 2d 405, 407, 168 A. L. R. 939. Defendant concedes that the law is properly stated in that case; but that different facts brought about the opposite result; and that if the rule of that case is applied here, it brings about a result favorable to the defendant. The facts in the *Wheelock* case are generally similar to those in the one at bar. The carrier Wheelock had transported liquor for Hiram Walker & Company under an "Order Notify" bill of lading consigning the goods to Liquors, Inc. Wheelock also failed to pick up the "Order Notify" bill of lading, and warehoused the goods in the defendant Bankers Warehouse Company which permitted withdrawal of the same by Liquors, Inc. The court there found that the defendant warehouse did in fact have notice of the failure of Liquors, Inc., to pay for the goods. Wheelock's manager testified that at the time the shipment was delivered to the warehouse, and also again the next day, he contacted defendant warehouse's manager and gave him specific instructions not to deliver any of the merchandise until the bill of lading had been delivered to them, and later when part of the merchandise had been released, plaintiff's manager again told the defendant to release no more of the merchandise, but Wheelock's warehouse informed him that it was all right because they had received sufficient money to cover that portion of the shipment that had been released.

The foregoing evidence was sufficient to support the finding the court made in that case: That the goods were deposited under such circumstances that there was notice to the warehouse that they had not been paid for and were not to be delivered until that was done. There was no such

evidence in the instant case and the court found to the contrary. In the *Wheelock* case, the court recognized that under different facts an opposite result would obtain, using this language:

> "*If the plaintiff* instructed defendant to receive and store the goods for Liquors, Inc., or *delivered them under such circumstances as to give defendant reasonable ground to believe that plaintiff intended that the goods be held for Liquors, Inc., and defendant released said goods to Liquors, Inc. in good faith, without knowledge or information that plaintiff intended to hold the goods until payment, that constitutes a defense to plaintiff's action.*" (Italics added.)

The holding of the court in the instant case is entirely consistent with the expression of the Colorado court in the *Wheelock* case.

We conclude that the trial court could properly determine, as it did, that the defendant Cornwall was entitled to assume that the merchandise was delivered for the account of Schramm Enterprises, based on its finding that Cornwall had neither actual nor constructive notice of the fact that the plaintiff carrier had failed to discharge its duty by picking up the bill of lading. That being so, the defendant was not bailee for plaintiff and the plaintiff's various contentions regarding defendant's failure to issue a warehouse receipt to plaintiff and the duties of a bailee become immaterial.

Judgment affirmed. Costs to respondent.

WOLFE, C. J., and WADE, LATIMER and McDONOUGH, JJ., concur.