Patte L. BELLROSE, as Executrix of
the Estate of Ray S. Bellrose,
Deceased, Plaintiff-Appellant,

v.

DENVER FLORISTS FEDERAL CRED-
IT UNION, Defendant-Appellee.

No. 82CA0666.

Colorado Court of Appeals,
Div. II.

Dec. 29, 1983.

Rehearing Denied Jan. 26, 1984.

Certiorari Denied June 25, 1984.

Harry A. King, Harry A. King, Jr., Den-
ver, for plaintiff-appellant.

Shafroth & Toll, P.C., Frank H. Shafroth, C. Kevin Cahill, Denver, for defendant-appellee.

KELLY, Judge.

In an action for conversion, plaintiff, Patte L. Bellrose, representing the estate of her deceased husband, Ray Bellrose, alleged that defendant, Denver Florists Federal Credit Union, wrongfully delivered certain stock, held as security for a loan to decedent, to a third party. After Ray Bellrose repaid the loan balance, the Credit Union returned the stock to Gerhard and Emma Mannweiler, in whose names the stock was issued. Bellrose appeals the trial court's order granting the Credit Union's motion to dismiss, arguing that as a bailee, the Credit Union was obligated upon decedent's repayment of the loan to return the stock to the decedent, the bailor, regardless of whose name appeared on the stock certificate. We affirm.

Ray Bellrose, as president of Ray's Greenhouse, Inc., owned 400 shares of stock in Denver Wholesale Florist Company. Denver Wholesale Florist markets flowers and provides its member growers with discount rates on flower cuttings and marketing commissions. In order to receive these discounts, a grower must be a stockholder in the company.

In 1974, Ray's Greenhouse leased its real property and greenhouses to the Mannweilers for a term of five years with an option to purchase at the end of the lease term. Ray's Greenhouse also sold 400 shares of stock in Denver Wholesale Florist Company to the Mannweilers, who executed a promissory note under which they would pay the purchase price of the stock, $20,-000, at the completion of the lease term and would pay interest thereon to Ray's Greenhouse during the term of the lease. Ray Bellrose retained the right to vote the stock as the Mannweilers' proxy. The stock transfer was accomplished so that the Mannweilers could receive the discounts available only to stockholders through Denver Wholesale Florist Company.

To effect the stock transfer, Ray Bellrose withdrew the 400 shares of stock from the Credit Union, where the shares were securing a previous loan to him, and executed a "change of name" in favor of the Mannweilers. The trial court found that the stock was then delivered to the Credit Union by the Mannweilers who assigned the stock to the Credit Union, pledging it as collateral for a separate personal loan of $20,000 to Ray Bellrose.

In 1977, Ray Bellrose paid to the Credit Union the outstanding balance of his loan and instructed the Credit Union to return the various stocks securing the loan to him and the Denver Wholesale Florist Company. The Credit Union returned the stocks as instructed except for the stock bearing the Mannweilers' name which was returned to the Mannweilers, who then moved to Germany, taking the stock with them.

The trial court found that the Credit Union was unaware of any arrangement between the Mannweilers and Bellrose and that it properly returned the stock to the party who had delivered it into the Credit Union's possession, and whose name appeared on the stock. The trial court ruled, therefore, that Bellrose had not met her burden of establishing a prima facie case of conversion and granted the defendant's motion to dismiss.

Bellrose argues that regardless of whose name appeared on the face of the stock, the Credit Union as bailee was required to return the stock to Bellrose as bailor upon satisfaction of the loan obligation. The Credit Union argues that under the relevant provisions of Article 9 of the Uniform Commercial Code governing secured transactions, it acted properly in returning the collateral to the Mannweilers.

■ The UCC, Article 9, governs secured transactions which are "intended to create a security interest in personal property or fixtures, including goods, documents, instruments, general intangibles, chattel paper, accounts, or contract rights." Section 4-9-102(1)(a), C.R.S.1973 (1982 Cum.Supp.). The Official Comment to this section posits the following test for determining whether the UCC applies: "Is the transaction intended to have effect as security?" In the present case the Credit Union loaned Ray

Bellrose money and secured repayment by taking various stock certificates as collateral, including the Mannweilers' stock which was pledged by the Mannweilers as accommodation on Ray Bellrose's behalf. Such a transaction is, therefore, within the purview of the UCC.

█ In § 4-9-112, C.R.S.1973 (1982 Cum.Supp.) the UCC contemplates the situation where, as here, someone other than the obligor has rights in the collateral held as security by the secured party. To have rights in the collateral a debtor, the Mannweilers in this case, must at least have some degree of control or authority over the collateral. Section 4-9-112, C.R.S.1973 (1982 Cum.Supp.); and § 4-9-105(1)(a), C.R.S.1973 (1982 Cum.Supp.); *Kinetics Technology International Corp. v. Fourth National Bank*, 705 F.2d 396 (10th Cir. 1983). Where the secured party is unaware of arrangements made between the obligor and the owner of collateral, he is entitled to return the collateral to the pledgor:

> "The duties which this Section imposes on a secured party toward such an owner of collateral are conditioned on the secured party's knowledge of the true state of facts ... nor does the Section suggest that the secured party is under any duty of inquiry." Section 4-9-112, C.R.S.1973 (Official Comment).

█ Thus, under § 4-9-112, the owner of collateral is imbued with the same rights as the obligor, and the secured party, unless he has knowledge that the obligor is the rightful owner of the collateral, is entitled to return the collateral to the party who delivered the collateral and who appears to have rights in it.

█ Under the circumstances presented here, where the stock was issued in the Mannweilers' name and delivered to the Credit Union by them as collateral for the loan to Ray Bellrose and the Credit Union had no knowledge of the circumstances surrounding the transfer of stock ownership from Ray Bellrose to the Mannweilers, the Credit Union properly returned the stock to its apparent owners, the Mannweilers. To hold otherwise would require a

secured party to ascertain the superior title to the collateral, a burden not properly placed on the secured party.

█ Bellrose does not posture the case as being governed by the UCC, but relies instead on *Eaton v. Commercial National Bank*, 66 Colo. 450, 182 P. 890 (1919). There, the court held that, under the circumstances presented, the bailee was estopped to deny the title of the bailor. Application of the *Eaton* case is contingent upon establishing that Ray Bellrose was the one who delivered the stock and was, therefore, the bailor. The trial court, however, found that the stock was delivered by the Mannweilers, and the record supports that finding.

Further, the cases cited by Bellrose are inapposite. In both cases, *Wheelock Bros., Inc. v. Bankers Warehouse Co.*, 115 Colo. 197, 171 P.2d 405 (1946), and *Jensen v. Eagle Ore Co.*, 47 Colo. 306, 107 P. 259 (1910), the property was delivered to the bailor by the obligor, rather than, as here, by an accommodation party pledging collateral on the obligor's behalf.

We have considered Bellrose's other arguments and find them to be without merit.

Judgment affirmed.

SMITH and VAN CISE, JJ., concur.