THORNAL, Justice.
Appellant Jacksonville Terminal Company, which was defendant below, seeks reversal of a final judgment based on a jury verdict in favor of appellee Misak, who was plaintiff below, in an action for damages resulting from the alleged negligent injury of the plaintiff.
Several points are made for reversal but those which challenge our consideration are the ruling of the trial judge with reference to an alleged release, the sufficiency of evidence of negligence to support the plaintiff's claim and the alleged ex-cessiveness of the verdict.
John J. Misak was a switchman employed by Jacksonville Terminal Company. By his complaint he alleged that while he was acting in the course of his employment in a switching operation “the defendant carelessly and negligently propelled and ran” a train of cars upon him. By a second count he alleged that the appellant “negligently failed to furnish plaintiff with a safe place to work.”
On this appeal those aspects of the evidence most favorable to the verdict must be considered. In sum it was that about 11:00 p. m. on April 23, 1954, Misak and a co-employee were operating a switch to enable the switching crew, of which he was a member, to shift a train of four cars into a siding. In order to complete the operation it was the duty of appellee to operate the switch manually and cross the track to the other side. After completing the crossing it was Misak’s duty to signal *297 the switching engineer to move the train into the siding. The appellee operated the switch hut while he was engaged in crossing the. track his co-employee prematurely gave the signal to the engineer. It was not the duty of the co-employee to give the signal. The train started moving, reaching appellee as he was in the middle of the track. He grabbed for various bars on the approaching car and undertook to board the train to avoid being run over. In the process his foot slipped and as a result various parts of each of the toes on his left foot were severed. Alleging hospitalization, permanent disability, resultant incapacity to continue his job as a switch-man and prolonged pain and suffering, the appellee filed this suit. He alleged that the action arose under the Federal Employers’ Liability Act, 45 U.S.C.A. § 51 et seq.
The case was tried before a jury, which rendered a verdict for appellee in the amount of $65,000. Appellant’s motion for a new trial was denied and judgment was entered on the verdict. Reversal of the judgment is now sought.
The principal contentions of appellant are that the evidence failed to support the alleged claim of negligence, that the amount of the verdict was excessive and that the court committed error with a pretrial ruling regarding certain alleged releases.
The appellee contends in support of the judgment that the verdict, including the amount of damages, was adequately sustained by the evidence and that there was no error in the ruling with reference to the alleged releases.
Appellant’s answer to the complaint merely denied the alleged negligence and asserted a complete release executed by appellee prior to the filing of the suit.
At the trial the appellant apparently undertook to show that the appellee’s injury resulted from his failure to use his own power of sight to see the approaching train. It is asserted that by the exercise of reasonable care he could have avoided being injured.
An examination of the record leads us to the conclusion that there was adequate evidence of negligence to support the jury’s obvious conclusion that appellee’s injury resulted from the negligence of the co-employee in signaling the engineer prematurely. The accident occurred in the dark of night. There is no indication that the appellee was doing anything that he shouldn’t have been doing or that he failed to exercise reasonable caution. We think that there was adequate evidentiary support for a finding of negligence on the part of the Terminal Company.
We pass on to the ruling of the trial judge with reference to the alleged releases. Shortly before the trial appellant requested leave to file an amendment to its answer by which it asserted that before suit the parties agreed upon a settlement and that Misak had acknowledged payment for all claims against the Terminal Company. Attached to this answer were six documents, each signed by appellee, acknowledging the receipt of various sums of money on several different dates. The documents are identical in form and content except as to date and amount stated in each. Apparently these documents were, forms used by the appellant company as a basis for obtaining information to be furnished to the auditing department for the issuance of vouchers. The document is headed “Certificate with Respect to Sickness Benefits and Allocation of Factors in Settlement of Claim for Personal Injuries”. The first paragraph of the document reads in part as follows:
“This is to certify that I have on the date hereinafter indicated made settlement with the Jacksonville Terminal Company for all claims for Injuries and Damages sustained by me on the date and for the total amount herein stated. It is understood that as *298 a condition of ' this settlement I am obligated to reimburse the Terminal Company to the extent that' I receive duplicate payments as a result of sickness benefits paid me by the U. S. Railroad Retirement Board.”
This is the instrument which appellant contends constituted a complete release of ap-pellee’s claim. The proposed amendment to the answer was considered at a pre-trial conference. In addition to the alleged releases there was submitted for the consideration of the trial judge a stub which had been detached from each of the vouchers issued by the appellant in payment of the amount stated in each of the so-called releases. On this stub appeared the following: “In Full for the Following Items Due by Jacksonville Terminal Company” after which appeared “ * * * partial payment for personal injury sustained * * * ” (Emphasis added.) There was no evidence of a final payment.
Further, at the pre-trial conference the Assistant General Manager of appellant Terminal Company testified that in the issuance of these partial payments the employee’s time loss from work was a factor and that he was not aware of any other factor entered into the amount paid. Appellant’s counsel offered no objection to the testimony. In the course of the examination of this representative of the com;-' pany he further testified that the payments were not considered final and that no final settlement was made with appellee. This same witness testified that the documents tendered were not the forms used by the company for a final release. Finally when asked the question, “So that this is only a partial, is that correct?”, he answered, “Yes, sir; the stubs say ‘partial payment’.”
On the basis of this pre-trial consideration of appellant’s motion to amend its answer in order to assert the releases the trial judge concluded that the documents tendered did not constitute complete releases. He ruled that they were merely evidence of partial payments that could be submitted in reduction of any award ultimately allowed.
Appellant now contends that this ruling was erroneous. It relies on the cases which hold that when fraud or mutual mistake are asserted to challenge the binding effect of a release, the burden of proof is on the party challenging the release and a jury question is presented. To support its position appellant cites 45 Am.Jur. Releases, Sec. 49, p. 708, and a number of cases including Callen v. Pennsylvania Railroad Company, 1947, 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242. If this were a case where a release was being challenged for fraud or mutual mistake, appellant’s position would be sound. Such, however, was not the situation presented to the trial judge. From the vouchers issued to appellee as well as from the positive testimony of appellant’s own Assistant General Manager who handled the transaction it was clear that the documents were not releases. In other words Misak said they were not releases, appellant said they were not releases and the documentary evidence, to wit, the voucher, showed that they were not releases. There was no dispute about the matter. Under these circumstances no jury question w;as presented. See 76 C.J.S. Release § 72f, pp. 720-721. See also Atlantic Coast Line Railroad Company v. Boone, Fla.1956, 85 So.2d 834, 57 A.L.R.2d 1186.
If there had been any conflict as to what the parties intended or as to the existence of a mutual mistake the matter should have gone to the jury. Here there was no conflict. The trial judge merely accepted the testimony of the appellant’s own representative which was .undisputed and which was submitted to the judge without objection by the appellant. Under these circumstances we think the judge was eminently correct in holding that the documents were not complete releases but merely evidence of partial payment to be credited against any amount subsequently found due the appellee.
*299 Finally, we are confronted by the contention that the amount of the verdict is so shockingly excessive as to justify the award of a new trial on the theory that the jury must have been persuaded by passion and sympathy rather than by the evidence submitted. It appears that the appellee was thirty-four years old and the father of three children. He was earning at the time of his injury approximately three thousand dollars per year. He had developed a railroad seniority rating dating back twelve or thirteen years. He had a life expectancy of slightly over thirty-four years. He will not be able to work as a switchman and will not be able to undertake any job that will require prolonged periods of walking. His ability to maintain his balance in walking has been substantially impaired. Appellant has referred to analogous cases involving similar injuries where the amounts of the verdicts have been substantially lower. We are willing to concede that the amount awarded in the instant case appears to us as individuals to be high. However, at the judicial appellate level we are not in a position to conclude as a matter of law that the amount of this verdict is so shockingly excessive as to justify our intrusion on the jury function and require a new trial. In addition we must accord due respect to the judgment of an experienced trial judge who heard the case, considered the matter of excessiveness on the motion for new trial and declined to exercise his judicial discretion to disturb the verdict. Under all of these circumstances we cannot conclude that the amount of the verdict is so grossly excessive as to justify judicial interference.
We have considered the other points raised by the appellant with reference to the refusal of the judge to give certain requested instructions, as well as his rulings on certain matters of evidence. We do not find in these rulings any basis for reversal. Concluding as we do that the trial was conducted without error, the judgment under assault is—
Affirmed.
TERRELL, C. J., and THOMAS, O’CONNELL and BUFORD, JJ., concur.