HURLEY, Judge.
This appeal concerns the scope of authority of a homeowner’s association. The precise question is whether the Breakwater Homes Association has the authority to prevent a member/homeowner from adding a second story to his home. We answer in the negative and, therefore, reverse.
Breakwater is an exclusive subdivision in the City of Fort Lauderdale, Florida. It consists of fifty-nine single-story homes plus a community pool and other related facilities. The particular piece of property in question here was conveyed in 1960 from the Breakwater Beach Land Company to the original owners, a Mr. and Mrs. Burke. The warranty deed from Breakwater to the Burkes contained the following relevant provisions:
(4) ... no building, garage or other structure shall be constructed on the subject property without plans of such proposed building having first been submitted to the Board of Directors of Breakwater Homes Association, a nonprofit Delaware corporation, authorized to transact business in the State of Florida, and the approval thereof having first been obtained in writing from said Board of Directors.
* * # * * #
(8) The legal or equitable title to the property herein contained can only be owned during the duration of these restrictions by an approved member of the Breakwater Homes Association, so long as such association is in existence.
The deed further stated that the restrictions were to run with the land for twenty years.
Henry P. Wenger, appellant, purchased the Burkes’ property in 1976. Before doing so, and pursuant to the requirements of the deed, he joined the Breakwater Homes Association. At that time, the association had a by-law which permitted it to “establish rules and regulations for the use of the common facilities .... ” Pursuant to this enabling authorization, the association enacted article one, rule four which duplicated the deed restriction and provided as follows:
No building, garage or other structure or external structural change shall be constructed on any property unless such plans have first been submitted to and approved by the City of Fort Lauderdale Building and Zoning Department and then submitted to the Board of Directors of Breakwater Homes Association and their subsequent approval obtained in writing.
Sometime in late 1979 or early 1980, Mr. Wenger decided to add a second story to his home. He obtained a building permit from the City of Fort Lauderdale and submitted a request for approval to the association’s board of directors. The board, however, citing esthetics and uniformity within the subdivision, unanimously disapproved Mr. Wenger’s request. Thereafter, he initiated a declaratory action to contest the association’s power. The trial court ruled for the association and this appeal ensued.
The deed restrictions on the Wenger property expired in December, 1980. It also appears that on the date of trial, the other deed restrictions either had expired or were on the verge of expiring. Consequently, the court did not rely on the deed restrictions, but based its decision on a finding that the association possessed the power in question and that it had not been exercised in an arbitrary or unreasonable manner.
It is undisputed that Mr. Wenger, in making application for membership in the association, agreed to be bound by the bylaws and rules and regulations of the association. His agreement, however, was implicitly limited to valid by-laws, rules and regulations. Thus, the mere existence of the agreement does not resolve the underlying question of whether Article I, Rule 4, — the rule requiring association approval for external structural changes — is a valid exer *621 cise of the association’s powers. To answer this question we must turn to the source of the association’s power, its amended bylaws.
Article II, Section 1, indicates that the purpose of the association “is to provide its members with maintenance of individual residential property ... and of community facilities .... ” The terms “maintenance” and “community facilities” are defined in Article XI, Sections 1 and 2. “Maintenance” means “that the Corporation assumes the obligation to care for the lawns, trim the shrubbery, replace sprinkler heads, and from time to time, paint the exterior of the resident building including the roof.” “Community facilities” include the “[c]lub-house, pool, pond and other common grounds and artifacts not falling under individual ownership by lots or land parcels ... . ” Finally, Article V, Section 2 delineates the authority of the board of directors. The preamble to Section 2 indicates that the board “shall have the powers and duties necessary for the administration of the affairs of the corporation and may do all such lawful acts and things as are not by Statute or by the Certificate of Incorporation or by these Amended By-Laws, directed or required to be exercised or done by the members.” Subsection “c”, in turn, authorizes the board “to establish rules and regulations for the use of the common facilities owned by the corporation to be used by the membership, which rules and regulations shall be for the purpose of the safety, convenience and general welfare of the entire membership.”
It is well settled that a corporation may normally expressly exercise “only powers conferred by act of incorporation and implied power necessary to the performance of authorized functions.” Orlando Orange Groves Co. v. Hale, 107 Fla. 304, 311, 144 So. 674, 676 (1932). Thus, we hold that the homeowners’ association exceeded its powers by promulgating the rule that individual construction would be subject to association approval. Accordingly, the trial court’s decision that the association was reasonably exercising its powers in denying Mr. Wen-ger’s request to build, cannot be sustained.
The cause is reversed and remanded for further proceedings consistent with this opinion,
DOWNEY and BERANEK, JJ., concur.