575 So.2d 696 (1991)
S & T ANCHORAGE, INC., Appellant and Cross/Appellee,
v.
Jonathan LEWIS and Peter Lewis, Appellees and Cross/Appellants.
Nos. 90-1951, 90-1756.
District Court of Appeal of Florida, Third District.
February 5, 1991.
Rehearing Denied April 1, 1991.
*697 Thomson, Muraro, Bohrer & Razook and Parker D. Thomson and Steven W. Davis, Miami, for appellant and cross/appellee.
Weil, Gotshal & Manges and Bruce J. Berman and Jamie A. Cole, Miami, for appellees and cross/appellants.
Before BASKIN, FERGUSON and LEVY, JJ.
BASKIN, Judge.
Jonathan Lewis appeals an adverse final summary judgment holding that he has no right to assert a counterclaim to establish his waterfront rights. In addition, S & T Anchorage, Inc. [Anchorage] appeals a final judgment dismissing its counterclaim for abuse of process; Jonathan and Peter Lewis cross-appeal the final judgment, which also dismisses their counterclaims for abuse of process and breach of fiduciary duty. The appeals have been consolidated. We reverse the final summary judgment prohibiting Jonathan Lewis's claims and remand for further proceedings; however, we affirm the final judgment as to all parties.
Anchorage acquired property which was subdivided into nine lots for individual sale. Seven of the lots were inland; two were on the waterfront. Howard Scharlin, Anchorage's president and director, wrote and recorded a Declaration of Covenants for the subdivision. The Declaration defined the common areas of the subdivision to include the dock area, and set forth the rights and responsibilities of the owners. The Declaration established the Anchorage Owners Association, Inc., [Association] and named Anchorage as a shareholder.
After the seven inland lots had been sold, Scharlin, as president of the Association, executed an Assignment of Harbor, transferring the Association's waterfront rights to Anchorage. Scharlin also executed the Assignment as president of Anchorage.
Challenging the Assignment, the Association sued Anchorage, but settled the lawsuit and agreed to dismissal with prejudice. The Association relinquished its waterfront rights, and recognized the efficacy of the assignment.[1]
Anchorage had responded to the Association's lawsuit by filing a counterclaim against Jonathan Lewis, a lot owner,[2] for damages predicated on abuse of process.[3] Jonathan Lewis filed a counterclaim against Anchorage to enforce his waterfront rights as an individual lot owner and to obtain an easement by necessity to gain access to the waterfront; he joined with Peter Lewis to claim damages from Anchorage for abuse of process, and damages from Anchorage's principals for breach of fiduciary duty.
After the settlement of the Association's lawsuit, Anchorage moved for summary judgment against Jonathan Lewis, arguing that his counterclaim was barred by the Association's relinquishment of waterfront rights. Jonathan Lewis moved for summary judgment against Anchorage claiming *698 that his refusal to consent to the Association's relinquishment of its rights preserved his individual rights to the waterfront. Denying Jonathan Lewis's motion and granting Anchorage's motion, the trial court entered final summary judgment against Jonathan Lewis on his waterfront rights claim.
Next, the trial court entered a final judgment dismissing the Lewises' counter-claims for abuse of process and breach of fiduciary duty, and dismissed Anchorage's counterclaim for abuse of process. Anchorage appeals and the Lewises cross-appeal the judgment.
First, Anchorage argues that Jonathan Lewis is barred from reasserting a claim for waterfront rights in view of the Association's settlement ratifying the Assignment. Second, Anchorage contends that under the Declaration, Lewis has no individual right to assert an individual claim, as the Declaration grants the Association all rights to the waterfront. We reject both arguments.
Contrary to the trial court's decision, the settlement agreement and subsequent voluntary dismissal of the Association's lawsuit do not extinguish Jonathan Lewis's individual rights. Because the Association is a corporation, it may not act in any way not authorized in its articles of incorporation or bylaws. Randall v. Mickle, 103 Fla. 1229, 138 So. 14 (1931); Sudduth v. St. Andrews Bay Community Hotel Corp., 99 Fla. 151, 126 So. 302 (1930). The articles and bylaws must be consistent with the provisions of the superior document, the Declaration. See Roth v. Springlake II Homeowners Ass'n, 533 So.2d 819 (Fla. 4th DCA 1988) (approval of each and every lot owner was required, where declaration provided that no structure could be maintained on common areas, to grant easement in contravention to declaration; homeowners' association could not grant exclusive easement); R. Natelson, Law of Property Owners Associations, § 4.5 (1989).
The binding Declaration does not grant any authority to the Association to sell, convey, assign, or in any way encumber the common areas. The Declaration gives the Association the authority to levy general assessments, Declaration, Art. 5 § 2a, to levy special assessments, Art. 5 § 3, to bid on foreclosed lots,[4] sell, acquire, hold, lease, mortgage, and convey the lots, Art. 5 § 5, to enforce monthly maintenance assessments on dock slips, Art. 8 § 1, and to assign to the owners its rights and duties respecting the dock area. Art. 8 § 1. The Declaration defines owners as class A voting stock holders, and Anchorage as a class B stockholder. Art. 3 § 2.
The Declaration does not empower the Association to sell or convey the dock areas or the common areas. The Assignment, executed by Scharlin on behalf of the Association, and the Association's subsequent ratification of the Assignment are invalid because they exceed the Association's authority and are ultra vires acts. Wenger v. Breakwater Homeowners Ass'n, 423 So.2d 619 (Fla. 4th DCA 1982); Barnett & Klein Corp. v. President of Palm Beach  A Condominium, Inc., 426 So.2d 1074 (Fla. 4th DCA 1983), see Lakes of Emerald Hills v. Silverman, 558 So.2d 442 (Fla. 4th DCA 1990) (association bylaws do not support association's entitlement to attorney fees); Roth; see also Harwick v. Indian Creek Country Club, 142 So.2d 128 (Fla. 3d DCA 1962) (agreement between developer and some property owners invalid where not executed by all lot owners in subdivision).
Even if, as Anchorage asserts, the Assignment and settlement were adopted pursuant to a proper vote as provided by the Association bylaws, the absence of authority to execute such documents renders them ultra vires, Roth; Natelson, and invalid. Barnett & Klein Corp.. Thus, neither the Assignment nor the settlement may operate to deprive Jonathan Lewis of his individual rights.
Next, we address Anchorage's contention that the Declaration grants the Association *699 all waterfront rights. Jonathan Lewis cites language in the Declaration stating that benefits inure to the individual owners.[5] Anchorage counters that the Declaration[6] vests all property rights in the Association and none in Lewis. Apparently convinced by Anchorage's argument, the trial court ruled in Anchorage's favor, finding that Jonathan Lewis, individually, could not reassert claims dismissed by the Association.
The ambiguity and conflict in the Declaration preclude us from ascertaining in whom the disputed property rights vested. "[W]here the terms of the instrument are ambiguous, casting doubt upon the intent of the parties, this intent must be determined by the trier of fact, and is not to be determined upon a motion for summary judgment." Westchester Fire Ins. Co. v. In-Sink-Erator, 252 So.2d 856, 858 (Fla. 4th DCA 1971); Commercial Trading Co., Inc. v. Zero Food Storage, Inc., 199 So.2d 109, 112 (Fla. 3d DCA), cert. denied 204 So.2d 332 (Fla. 1967); Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc., 513 So.2d 218, 219 (Fla. 1st DCA 1987); Griffin Builders Supply, Inc. v. Jones, 384 So.2d 265, 266 (Fla. 2d DCA 1980). We find that a genuine issue of material fact exists as to whether Jonathan Lewis has individual rights, separate and distinct from his derivative rights as a member of the Association.
Having determined that Anchorage relies on ultra vires acts of the Association, and that a genuine issue of material fact exists as to Jonathan Lewis's right under the Declaration to maintain an individual claim against Anchorage, we reverse the final summary judgment and remand for further proceedings.
Finding no merit in the abuse of process or breach of fiduciary duty claims, we affirm the final judgment dismissing all remaining counterclaims. Thomson McKinnon Securities, Inc. v. Light, 534 So.2d 757 (Fla. 3d DCA 1988); Della-Donna v. Nova University, Inc., 512 So.2d 1051 (Fla. 4th DCA 1987).
Final judgment affirmed; summary judgment reversed and remanded.
NOTES
[1] The Lewises were not parties to or mentioned in the settlement agreement.
[2] Anchorage also filed a counterclaim against another lot owner who is not a party to this appeal.
[3] Anchorage contended that Jonathan Lewis had caused the Association to file the lawsuit against Anchorage. Anchorage later amended its counterclaim to add Peter Lewis, Jonathan Lewis's father, as a defendant.
[4] The lots, of course, are distinguishable from the common areas.
[5] The preamble to the Declaration states:

... the Property shall be held, sold and conveyed subject to the following easements, restrictions, covenants and conditions, ... and shall inure to the benefit of each Owner thereof.
Article 11, section 1 of the Declaration provides:
The covenants and restrictions contained in this Declaration, and as the same may be amended from time to time, shall run with the land and shall inure to the benefit of and be enforceably by the Declarant, the Association, the Owners ...
[6] Article 4, section 1 provides:

... the Declarant hereby covenants that it shall convey the Common Area to the Association, free and clear of all liens and financial encumbrancess, not later than the termination of Class B membership.