ALTENBERND, Judge.
Network Video, Inc., and its guarantors, the Buntes and the Valencies, appeal a final summary judgment awarding damages to NCNB National Bank of Florida on a promissory note and related personal guarantees. We reverse because there are unresolved issues of fact concerning a counterclaim and a defense of setoff filed by Network Video and its guarantors.
Network Video operated retail stores specializing in video equipment. MTC-USA, Inc., an Ohio corporation, planned to import televisions from China. Network Video intended to sell the televisions if they could be imported into the United States. To import the televisions, MTC needed a line of credit. Thus, in August 1987, Network Video introduced MTC to NCNB.
MTC obtained a $300,000 revolving line of credit from NCNB. As part of the transaction, Network Video pledged its $300,000 certificate of deposit with NCNB as collateral for MTC’s line of credit. The record contains evidence that Mr. Bunte, as president of Network Video, asked NCNB to give Network Video three days’ notice of any request by MTC to draw upon the line of credit. There are written memoranda from NCNB which indicate that it agreed to this procedure. After giving Network Video notice concerning MTC’s first draw of approximately $30,000, NCNB allegedly issued the next three draws in September and October 1987, totalling $269,000, without providing any advance notice to Network Video.
When it discovered that the last two loans had been made, Network Video protested the bank’s failure to notify it in advance. Apparently, MTC received the money, but Network Video received no televisions. In January 1988, the loan officer at NCNB who was responsible for the Network Video account wrote to Network Video and stated:
On August 17, 1987, A Revolving Line of Credit for $300,000 was set up for MTC/USA, Inc. After promising that I would let you know when a draw was requested against this loan, I did not advise you when the amount of $179,- *31 450.00 was requested on October 27, 1988 [sic]. The balance out at present is $800,000.00.
My apology to you for this action. I feel very badly about it and hope it will not spoil our many years of working together.
In March 1988, Network Video and NCNB entered into new agreements which established a $600,000 line of credit for Network Video. One half of this amount was unsecured, and the other half was secured by the $300,000 certificate of deposit, which also served as collateral for MTC. The Buntes and the Valencies agreed to unconditionally guarantee the entire line of credit. NCNB’s commitment letter states that:
Since the collateral on the secured line is also the collateral for a loan made to MTG-USA, Inc., the use of the secured line is restricted until the collateral is released from the MTC-USA loan.
Similar language is contained in the secured promissory note.
Network Video borrowed the full amount of its $300,000 unsecured line of credit. Thereafter, it attempted without success to obtain the release of all or part of its CD, arguing that NCNB had breached its agreement to give Network Video notice of MTC’s draws. When Network Video’s $300,000 unsecured line of credit came due in March 1989, it defaulted and took the position that its actions were justified because NCNB continued to hold the $300,-000 CD as collateral for MTC.
When NCNB filed suit on the new promissory note and guarantees, Network Video and its guarantors raised the failure to provide notice of the MTC draws as a defense of setoff and as a counterclaim. The trial court granted summary judgment in favor of NCNB on the theory that any claim arising out of the 1987 loans to MTC was essentially settled and released by the new loan agreements in March 1988. We reverse because the trial court misinterpreted the new loan agreements.
It is possible that as consideration for the new loans in March 1988, NCNB intended to obtain a release of any claim arising out of its failure to notify Network Video of MTC’s loan. The loan documents in March 1988, however, do not contain any release, nor do they reflect a waiver or abandonment of the claim as consideration for the new loans. They merely acknowledge NCNB’s position that the CD continued to be collateral for the MTC loan. We can affirm this summary judgment only if the written agreements prepared by NCNB clearly and unambiguously express a mutual intent to release these preexisting claims. Commercial Trading Co. v. Zero Food Storage, Inc., 199 So.2d 109 (Fla.3d DCA), cert. denied, 204 So.2d 332 (Fla.1967); see also Snyder v. Cheezem Dev. Corp., 373 So.2d 719 (Fla.2d DCA 1979). Because they do not, we cannot.
We note that for purposes of summary judgment, NCNB has assumed that Network Video and its guarantors would have a valid counterclaim and defense of setoff but for the fact that the new loan documents constituted either a waiver or release of such claims. NCNB may have additional legal grounds on which to contest the adequacy of the counterclaim and defense. Because those matters have not been ruled upon by the trial court, we decline to consider them at this time.
Reversed and remanded.
SCHOONOVER, C.J., and SCHEB, J., concur.