WALLACE, Judge.
Sean Alderman appeals an adverse final judgment entered on his claims for negligence and breach of contract against BCI Engineers & Scientists, Inc. (BCI). The circuit court entered the final judgment after it made separate rulings granting BCI’s motions for summary judgment— first on the negligence claim and then on the contract claim. Because BCI did not meet the required showing for the entry of a summary judgment on either claim, we reverse the final judgment in its entirety.
I. INTRODUCTION
Mr. Alderman’s residence suffered damage caused — at least in part — by sinkhole activity. He hired BCI to perform a sinkhole investigation and to prepare a report. BCI also acted as Mr. Alderman’s engineer of record for the remediation work that was performed by another contractor. Mr. Alderman settled the sinkhole claim with his property damage insurer, and he gave the insurer a release. Later, Mr. Alderman filed an action against BCI for negligence and breach of contract. The issues arising on our review of the circuit court’s orders granting BCI’s motions for summary judgment on the negligence claim and the breach of contract claim involve two questions: (1) whether the scope of the release that Mr. Alderman *398 gave to his property damage insurer was broad enough to include the negligence claim against BCI and (2) whether BCI’s engineering work on the investigation and report met the applicable standard of care.
II. THE FACTUAL BACKGROUND
In January 2007, Mr. Alderman became aware of a possible sinkhole problem at his residence in Lakeland. He contacted his insurer, State Farm Florida Insurance Company, and met with an adjuster. Afterward, Mr. Alderman hired BCI, an engineering firm, to help him address the problem. BCI performed its work on the project in two distinct stages, an investigative phase and a remediation phase.
The investigative phase of the work began on February 9, 2007, when Mr. Aider-man entered into a written contract with BCI for the performance of a geotechnical subsidence investigation. The scope of the services called for by the contract included an on-site inspection, appropriate testing, and the preparation of a report documenting the results of the investigation.
On March 21, 2007, BCI completed its geotechnical report presenting the results of the subsidence investigation. In the report, BCI opined “that the distress to the Alderman residence is the result of a combination of factors, including possible sinkhole activity.” BCI recommended a program of subsurface compaction grouting to stabilize Mr. Alderman’s residence against further settlement. The proposed grouting would be performed by a foundation repair contractor, not BCI. But BCI’s report also made the following recommendation for the second, or remediation, phase of its work: “In order to ensure compliance with the finding of this study and project specifications, we recommend that BCI be retained to evaluate the contractor bids and provide project monitoring and oversight services during the grouting operations.”
Mr. Alderman hired Certified Foundations, Inc. (CFI), to implement the sinkhole stabilization program recommended by BCI at his residence. CFI’s written proposal for the remediation work listed BCI as the geotechnical engineer for the project. The proposal provided further: “This proposal is based on the geotechnical exploration provided. All work shall be in accordance with this proposal and any further direction from BCI, the engineer of record.”
On April 5, 2007, BCI’s manager for the Alderman project sent a request for budget approval for the second phase of the project — the remediation phase — to State Farm’s adjuster. BCI’s request for budget approval for the remediation phase of its work said, in pertinent part:
BCI Engineers & Scientists, Inc. is pleased to have been selected to supervise the Compaction and Chemical Grout remediation program that was recommended in our Subsidence Investigation Report. We will perform the following tasks:
• Monitoring of grout casting installation
• Monitoring of compaction grout injection
• Layout and monitoring of chemical grout injection
The cost for these services will be $16,803. Please acknowledge your approval by signing below and returning it to us so that we may move forward. Should you have any questions or comments, please contact us. Thank you.
State Farm’s adjuster promptly signed the request to indicate his acknowledgment and acceptance and returned it to BCI.
CFI performed the grouting, and BCI supervised the project as Mr. Alderman’s *399 engineer. During the grouting process, the septic tanks on the property ruptured, causing sewage effluent to back up into parts of the house. As a result, Mr. Alderman had to hire a water damage and restoration contractor to clean the affected areas of the house. More important, once the grouting process was completed, Mr. Alderman continued to experience cracking and other damage to his residence attributable to its ongoing settlement. In Mr. Alderman’s view, the grouting program recommended by BCI and implemented by CFI had not fixed the problem.
III. THE PROCEDURAL BACKGROUND
In June 2008, Mr. Alderman filed an action against BCI, CFI, and the water damage contractor. In his complaint, Mr. Alderman asserted two claims against BCI: Count I (negligence) and Count V (breach of contract). The allegations of negligence against BCI related to its performance on the second phase of the work, i.e., supervising the remediation work that was undertaken by CFI. In his claim for breach of contract, Mr. Alderman alleged that BCI had breached the written contract for the first phase of the work, i.e., the geotechnical subsidence investigation.
BCI answered the complaint and raised numerous affirmative defenses. After conducting discovery, BCI moved for summary judgment on both the negligence and breach of contract claims. The circuit court granted BCI’s motion on the negligence claim but denied the motion on the breach of contract claim. Later, BCI renewed its motion for summary judgment on the breach of contract claim, and the circuit court granted the motion, which left Mr. Alderman with no claims remaining against BCI. Accordingly, the circuit court entered a final judgment in favor of BCI and against Mr. Alderman. This appeal followed.
IY. THE STANDARD OF REVIEW
The standard of review for an order granting a motion for summary judgment is de novo and requires a two-pronged analysis. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Summary judgment is proper only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, Huntington Nat’l Bank v. Merrill Lynch Credit Corp., 779 So.2d 396, 398 (Fla. 2d DCA 2000), and (2) “the moving party is entitled- to a judgment as a matter of law,” Aberdeen at Ormond Beach, 760 So.2d at 130. “If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an. issue might exist, summary judgment is improper.” Holland v. Verheul, 583 So.2d 788, 789 (Fla. 2d DCA 1991).
V. THE NEGLIGENCE CLAIM
BCI based its motion for summary judgment on the negligence claim on certain language appearing in a release that Mr. Alderman had signed and delivered to State Farm when he settled his insurance claim. BCI was not identified by name in the release. Nevertheless, BCI claimed that the coverage of the release was extensive enough to cause the release of Mr. Alderman’s negligence claim against BCI in addition to his insurance claim against State Farm.
The instrument that Mr. Alderman signed and delivered to State Farm in connection with the settlement of his insurance claim is titled “General Release of All Claims.” Mr. Alderman is identified in *400 the release as the “Releasor.” The instrument provides, in pertinent part:
1. ... By executing this General Release, Releasor ... does hereby fully and completely release and discharge STATE FARM FLORIDA INSURANCE COMPANY (and all parent and subsidiary companies affiliated with it in anyway [sic]), hereinafter referred to collectively as “Releasees,” from any and all current or future claims, rights[,] and actions whatsoever, whether ripe or contingent, arising in relation to the filing of insurance claims by Releasor relative to or associated with insurance coverage for the [Alderman residence].
2. NOW THEREFORE in consideration of the payment [of the settlement amount], the receipt and sufficiency of which is hereby acknowledged, the Re-leasor agrees as follows:
(a) The Releasor does hereby ... release, discharge, acquit, and indemnify Releasees, and their officers, directors, shareholders, executors, administrators, insurers, insureds, suppliers, distributors, attorneys, contractors, subcontractors, successors, privies, assigns, associations, parents, subsidiaries, holding companies, or partnerships of and from any and all claims ... whatsoever including but not limited to any coverage dispute, complaints regarding claims handling or bad faith, or the termination of insurance of the Property by the Re-leasees which the Releasor now has or which may hereafter accrue on account of or in any way growing out of any and all known or unknown, foreseen and unforeseen, property damage and any consequences of the activities listed in paragraph 1 above. The parties agree that the terms of this Release do not impact any rights of either Releasor or Releasees from seeking damages (either tort, contract, or subrogation) against unrelated entities.
(Emphasis added.)
In its argument, BCI relied on the boilerplate language in the instrument that released State Farm’s “contractors” and “privies.” According to BCI, it was one of State Farm’s contractors and privies because BCI and State Farm had contracted in the budget approval request for BCI to supervise the remediation work performed by CFI.
The circuit court agreed that the instrument in which Mr. Alderman released his insurance claim against State Farm was also effective to release his claim against BCI for alleged negligence in supervising CFI’s remediation work. In the order granting BCI a summary judgment on Mr. Alderman’s negligence claim, the circuit court ruled, in pertinent part:
4. A dispute arose as to the amount of damage regarding the insurance claim. [Mr. Alderman] and [State Farm] mediated a settlement on 19 February 2008. In consideration for the monetary payments by the insurance carrier, [Mr. Alderman] executed a General Release of All Claims which specifically and unambiguously included [State Farm] and its contractors from all claims “arising in relation to the filing of insurance claims” for damage to [Mr. Alderman’s] property.”
5. The allegations of Count One involve the services performed by BCI under its contract with [State Farm]. The undisputed facts support the argument of BCI that the general release includes them as a contractor in privy ■with [State Farm] as it relates to the negligent acts alleged in Count One. The so-called “carve-out” sentence of the release clearly excludes “unrelated entities,” and is not inconsistent or ambiguous with the clear language which *401 specifically includes contractors and those in privy with [State Farm],
We disagree with the circuit court’s ruling.
The circuit court erred in entering a summary judgment for BCI on the negligence claim based on the language of the release for two reasons. First, BCI’s argument hinged on its status as one of State Farm’s contractors or privies. But there is a substantial issue of fact concerning whether BCI ever had a contract with State Farm.
On the one hand, BCI and the circuit court viewed the signature of State Farm’s adjuster on the budget approval request for BCI’s role in the remediation phase of the work as creating a contract between State Farm and BCI. On the other hand, Mr. Alderman argued that the contract for the remediation phase of the work — like the contract for the investigative phase— was between BCI and him. Under Mr. Alderman’s view of the facts, the adjuster merely approved BCI’s budget for the work as Mr. Alderman’s insurance company, not as an independent contracting party-
Several facts support the view that the contract for the remediation phase of the work was between Mr. Alderman and BCI, not between BCI and State Farm. Mr. Alderman hired BCI initially, and he had a written contract with BCI for the first phase of the work. BCI’s report to Mr. Alderman recommended that he hire BCI to supervise the remediation phase. The conclusion that Mr. Alderman — not State Farm — hired BCI for the remediation phase of the work is consistent with these facts. Also, CFI’s proposal for the remediation work was addressed to Mr. Aider-man, not to State Farm, and the proposal listed BCI as the engineer of record for the project. In other words, BCI was Mr. Alderman’s engineer for the project, not State Farm’s. Finally, State Farm’s obligation to pay BCI arose from its contract with Mr. Alderman. Here, the circumstances are comparable to an automobile insurer’s approval of a body shop’s estimate for the costs of repairs to an insured’s automobile. Despite the insurer’s approval of the repair estimate, the contract for the repairs remains between the automobile owner and the body shop, not between the body shop and the insurer. Because there was a disputed issue of fact concerning whether BCI qualified as one of State Farm’s contractors or privies, the circuit court erred in granting BCI a summary judgment on Mr. Alderman’s negligence claim.
The second reason the circuit court erred in granting a summary judgment on the negligence claim arises from the language of the release. Thus we turn now to an examination of the release.
The only potential defendant specifically named in the release is State Farm. Thus for the instrument to be effective to release BCI or other parties not specifically named, such intent must be clearly expressed. See Hurt v. Leatherby Ins. Co., 380 So.2d 432, 433 (Fla.1980). In construing the release and determining the intent of the parties, we examine the entire instrument and not just isolated portions of it. See Commercial Trading Co. v. Zero Food Storage, Inc., 199 So.2d 109, 112 (Fla. 3d DCA 1967).
In paragraph 1 of the instrument, Mr. Alderman released State Farm and its affiliated companies from claims “arising in relation to the filing of insurance claims by [Mr. Alderman] relative to or associated with insurance coverage for the” Alderman residence in Lakeland. Paragraph 2(a) of the release purports to broaden its coverage to include multiple unnamed parties who are identified only by description. Also, paragraph 2(a) expands the instru- *402 merit’s scope to include claims accruing out of additional insurance-related disputes with State Farm “and any consequences of the activities listed in paragraph 1 above.” Of course, Mr. Alderman’s negligence claim against BCI did not arise out of an insurance-related dispute with State Farm. Also, even as expanded, the instrument’s scope remains limited to claims that may accrue on account of or grow out of the activities listed in paragraph 1, i.e., “arising in relation to the filing of insurance claims by [Mr. Alderman] relative to or associated with insurance coverage for the” Alderman residence.
BCI insists that Mr. Alderman’s negligence claim against it is within the scope of the release. According to BCI, “[i]t is clear that [the negligence] claims arise in relation to the filing of insurance claims by Alderman and that they are relative to or associated with insurance coverage for ... the Alderman residence.” Once again, we disagree.
Mr. Alderman’s negligence claim against BCI is for its alleged negligence in supervising CFI’s remediation work on the property. BCI’s performance of its engineering work on the Alderman residence is unrelated to Mr. Alderman’s insurance coverage with State Farm, his decision to make a claim under the policy, or State Farm’s handling of the claim. The circumstance that Mr. Alderman had insurance coverage with State Farm that provided a source for the payment of BCI’s fees does not make the cause of action for negligence a claim that arises “in relation to the filing of insurance claims” by Mr. Aider-man. The conclusion that the negligence claim does not fall within the scope of the release is consistent with the “carve-out” provision in paragraph 2(a) of the release. The “carve-out” provision preserved the rights of both Mr. Alderman and State Farm to seek damages “against unrelated entities.”
It follows that BCI was not entitled to a summary judgment on the negligence claim. The trial court erred in ruling to the contrary.
VI. THE BREACH OF CONTRACT CLAIM
Mr. Alderman’s claim for breach of contract against BCI was for an alleged breach of the written contract for the first phase of the work, i.e., the initial investigation and the preparation of the subsidence investigation report. When BCI renewed its motion for summary judgment on the breach of contract claim, it raised multiple grounds in support of its motion. In one of these grounds, BCI claimed: “No geo-technical engineer has alleged BCI fell below the standard of care in the performance of the Alderman contract, and therefore there is no breach of contract action that can be maintained with regards [sic] to Alderman’s contract with BCI.” In opposition to this ground, Mr. Alderman relied on the deposition testimony of his expert witness, Sunil Gulati, P.E. Mr. Gu-lati is a geotechnical engineer with extensive experience in sinkhole investigations, foundation designs, foundation remediation, and building inspections.
After a hearing during which the parties reviewed the deposition testimony of Mr. Gulati at length, the circuit court ruled that BCI was entitled to a summary judgment based on the absence of any evidence that BCI had breached the applicable standard of care. In its order granting the summary judgment, the circuit court ruled, in pertinent part:
[N]o one disputes that the grouting recommended by BCI was a necessary element, if not the ultimate means, of addressing the sinkhole problem.
*403 BCI undertook the contractual responsibility to identify the problem affecting [Mr. Alderman’s] residence and fulfilled the terms of that Contract with the delivery of its report. Therefore, BCI completed its contractual obligation and is not in breach of the Contract as is alleged in Count V of [Mr. Alderman’s] Complaint.
The circuit court expressly declined to rule on the remaining grounds for summary judgment asserted by BCI in its motion.
Under its contract to render professional engineering services on behalf of Mr. Alderman, BCI was obligated “to perform such services in accordance with the standard of care used by similar professionals in the community under similar circumstances.” Lochrane Eng’g, Inc. v. Willingham Realgrowth Inv. Fund, Ltd., 552 So.2d 228, 282 (Fla. 5th DCA 1989). In his deposition, Mr. Gulati testified to what he said were numerous breaches of the standard of care by BCI in connection with its sinkhole investigation and the preparation of its report. Mr. Gulati also testified in detail concerning how BCI’s numerous breaches of the standard of care had resulted in damage to Mr. Alderman. Granted, one could draw an inference from portions of Mr. Gulati’s deposition testimony — considered in isolation — that BCI had actually met the standard of care. But to draw such an inference, one would have to disregard the thrust of Mr. Gulati’s testimony as a whole.
Here, Mr. Gulati’s testimony raised a substantial question of fact concerning whether BCI’s performance had met the applicable standard of care. Under these circumstances, the circuit court erred in granting BCI’s motion for summary judgment on the breach of contract claim. When there is an issue of fact concerning whether a professional has met the standard of care, it is error to grant a summary judgment. Estate of Rotell ex rel. Rotell v. Kuehnle, 38 So.3d 783, 790 (Fla. 2d DCA 2010); Stuyvesant Ins. Co. v. Square D. Co., 399 So.2d 1102, 1104 (Fla. 3d DCA 1981); Schauer v. Blair Constr. Co., 374 So.2d 1160, 1161-62 (Fla. 4th DCA 1979). Because the circuit court expressly declined to address any of the other grounds asserted in BCI’s motion for summary judgment, we do not address them either.
VIL CONCLUSION
For the foregoing reasons, we reverse the final judgment in favor of BCI and remand this case to the circuit court for further proceedings. On remand, the circuit court may consider the remaining grounds for summary judgment on the breach of contract claim asserted in BCI’s renewed motion.
Reversed and remanded.
CASANUEVA, J., Concurs.
SHEPHERD, FRANK A., Associate Judge, Concurs specially.