# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

McNULTY LOFTS CONDOMINIUM
ASSOCIATION, INC.,

Appellant,

v.

WRH McNULTY GARAGE, LLC,

Appellee.

No. 2D23-536

_____

April 5, 2024

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Pinellas County; Thomas M. Ramsberger, Judge.

Michael J. Labbee and Tyler A. Hayden of Phillips, Hayden & Labbee, LLP, St. Petersburg, for Appellant.

Marie Tomassi and Charles M. Harris, Jr., of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., St. Petersburg, for Appellee.

MORRIS, Judge.

McNulty Lofts Condominium Association, Inc. (McNulty), appeals from a nonfinal order granting WRH McNulty Garage, LLC's (WRH) motion for summary judgment in WRH's ejectment action, which had the effect of determining the right to WRH's immediate possession of

property.  Because we conclude that there exists a disputed issue of material fact related to the boundary line at issue, we reverse.

BACKGROUND

This case involves a thirteen-story building in St. Petersburg.  WRH owns a public parking garage in the building while McNulty and the condominium association members own residential condominiums in the building.  The developer of the building built the seven-floor parking garage first, followed by the construction of eighty-five residential condominiums situated above the parking garage.

On December 13, 2005, the developer recorded a Declaration of Protective Covenants, Conditions, and Restrictions (Declaration).  In that document, the developer divided the public parking garage, which is located on floors one through six of the building, from the residential condominiums and their common elements (including parking spaces), which were located on floors six through thirteen.  The dispute in this case centers on the precise location of the dividing boundary line on the sixth floor between the public parking garage and the condominium property.

The original Declaration contained legal descriptions detailing the metes and bounds of both the public parking garage and the condominium property.  In April 2006, the Declaration was amended to reflect a new metes-and-bounds description; a survey of the building was also attached.  Subsequently, a new survey was prepared, leading to the Declaration being amended a second time in May 2006.  Finally, in September 2014, the Declaration was amended a third time for the purpose of recognizing certain portions of the commercial property (e.g., the building roof and exterior walls and surfaces of the building that

surrounded the condominium property) that had not been originally transferred to McNulty and its members by the developer.

On some unknown date, the developer's contractor constructed a gate on the sixth floor which separates the parking area for McNulty and its members from the commercial parking spaces in the public portion of the garage. An elevator lobby was also constructed solely for the use of McNulty and its members.

WRH purchased the public garage in April 2018. In February 2022, WRH filed its ejectment action against McNulty. The basis for the action was WRH's claim that the gate was encroaching on its property and depriving it of the use of several parking spaces. WRH claimed that McNulty refused to move the gate and refused to compensate WRH for the use of the parking spaces. However, in its complaint, WRH did not allege who installed the gate or the date of installation.

In response, McNulty denied that the gate was encroaching on WRH's property. McNulty also raised several affirmative defenses, including failure to state a cause of action, estoppel, adverse possession/prescriptive easement, and boundary by agreement or by acquiescence.

Thereafter, WRH filed a motion for summary judgment. In that motion, WRH argued that at some time after the third amendment to the Declaration was recorded, McNulty "redesigned its parking area and installed an access gate and elevator lobby on the shared sixth floor of the parking garage." WRH claimed that the third amendment to the Declaration and the condominium plat and survey revealed that the gate and elevator lobby encroached on WRH's property and prevented WRH from using several of its parking spaces. WRH sought an order requiring McNulty to move the gate as well as the elevator lobby.

In support of its summary judgment motion, WRH relied on the affidavit of its executive vice president, John Withers. Withers' affidavit was based on his "personal knowledge and the documents, records, and communications made and maintained in the regular course of WRH's business operations." While Withers attested that the access gate was installed at some unknown date after 2005, he did not attest as to who installed the gate. He asserted that he personally inspected the location and that based on his review of the third amendment to the Declaration and the condominium plat, "it appears that the access gate and the adjacent elevator lobby encroach on WRH [p]roperty."

McNulty filed its response to the motion, arguing that there were several disputed issues of material fact, such as the precise location of the boundary line and the identity of the party who installed the gate and elevator lobby. In support of its response, McNulty relied on the affidavit of Gary Engle, an investor of a corporate entity related to the original developer of the property. He asserted that both the original developer and its related corporate entities had been dissolved and were no longer registered in Florida. He stated that his affidavit was based on his personal knowledge as a former investor in the related corporate entity. Engle asserted that the developer intended for the elevator lobby and the adjacent gate and fence to designate the boundary line between the residential condominium property and the commercial property. Engle also asserted that the developer intended for the elevator lobby and the adjacent gate and fence as well as the parking spaces north of the gate and fence to be for the exclusive use of the condominium residents.

McNulty also relied on the affidavit of its current board president who asserted that "[a]t all times material to this case, the lobby of the south elevator, the adjacent security gate, and the two adjacent parking

spaces have been and are the delineation line between the sixth (6th) floor parking garage for the residential condominium property and the commercial property." She also asserted that "[a]t all times material to this case," those same areas as well as "all parking spaces north of the security gate and fence have been used exclusively by the Residential Condominium." Finally, she asserted that McNulty had always been responsible for and performed routine maintenance and cleaning of not only the security gate and fence, but also "the two adjacent parking spaces in conjunction with all spaces north of the security gate."

As a further basis for denying the motion for summary judgment, McNulty argued that its affirmative defenses were supported by the affidavits and were unrefuted, thereby precluding entry of summary judgment.

At the summary judgment hearing, WRH argued that the boundary lines were set forth in the Declaration and amendments thereto and that the gate clearly encroached upon its property. WRH also contended that summary judgment was appropriate because a recorded legal instrument renders the affirmative defenses of boundary by acquiescence/agreement and equitable estoppel inapplicable.

McNulty maintained that there was a dispute about the boundary line. McNulty pointed to the affidavits it filed, arguing that they reflected that when the building was developed, the boundary line was intended to be in the location of the gate. McNulty also argued that the gate had been treated as the boundary line for almost twenty years.

Ultimately, the trial court granted WRH's motion for summary judgment. The trial court concluded that "[t]he evidence admitted by the

Court[1] does not present sufficient disagreement for submission of this case to a jury" and that there was "no genuine issue of material fact."

The trial court rejected McNulty's affirmative defenses. In doing so, the trial court pointed to the Declaration and the amendments thereto as "establishing ownership of [WRH's] Property and the boundary line." The trial court found that WRH "provided recorded legal instruments establishing the identical, unchanged, and unambiguous boundary line since 2005, and it was not disputed in any meaningful manner by [McNulty]." The trial court also concluded that McNulty "failed to provide sufficient evidence" rebutting the recorded legal instruments, explaining that McNulty's "affidavits of individuals affiliated with" McNulty "did not provide sufficient disagreement such that it would require submission to a jury."

The trial court concluded that WRH was entitled to a judgment as a matter of law and ordered McNulty to remove the gate[2] within a specified period of time. The order provided that if McNulty failed to do so, WRH could remove the gate itself and then seek remuneration from McNulty

_____

[1] The evidence that was admitted and considered by the trial court consisted of the affidavits filed in support of WRH's motion and McNulty's response and the exhibits attached to those affidavits. The exhibits consisted of property appraiser information sheets, a building permit for the original developer, the Declaration and amendments thereto, the legal description of the property, the condominium plat and survey containing a diagram showing the parking lot and location of the elevator lobby and gate, warranty deeds, correspondence between WRH and McNulty, and property tax assessments.

[2] WRH's motion for summary judgment referenced both the gate and the elevator lobby. But at the summary judgment hearing, WRH confined its arguments to the location of the gate, though McNulty made arguments concerning both the gate and elevator lobby. The trial court's order only addresses the gate.

6

for the costs of doing so as well as damages incurred due to WRH's inability to use the parking spaces from the time it had provided notice to McNulty of the encroachment. The order also granted a writ of possession to WRH.

ANALYSIS

We review de novo an order granting summary judgment. *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). "A movant is entitled to summary judgment if no reasonable finder of fact could return a verdict for the nonmoving party." *G & G In-Between Bridge Club Corp. v. Palm Plaza Assocs.*, 356 So. 3d 292, 297 (Fla. 2d DCA 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "We view the facts in the light most favorable to [the nonmoving party] and may not weigh the evidence or make credibility determinations." *Id.* Where there exists a disputed issue of material fact, a trial court may not enter a summary judgment. *See HSBC Mortg. Corp. (USA) v. Mullan*, 159 So. 3d 250, 253 (Fla. 2d DCA 2015).

McNulty contends that there is a disputed issue of material fact related to the location of the boundary line based on the Declaration and its subsequent amendments and the condominium plat and survey. McNulty argues that the documents contain an internal inconsistency. In arguing for affirmance of the trial court's order, WRH also points to the Declaration, the third amendment, and the condominium plat and survey.

There is an internal inconsistency in the recorded legal instruments relied on by Withers and by the trial court.[3] Attached to the Declaration

_____

[3] McNulty conceded at oral argument that it did not address the internal inconsistency in its opposition to WRH's motion for summary judgment and that its supporting affidavits likewise did not address the

7

was the condominium plat and survey, and it is undisputed that the depiction of the sixth floor reflects that the elevator lobby on that floor appears to lie outside of the boundaries of McNulty's property. However, the Declaration defines "Condominium Elevators" in relevant part as

> two (2) certain elevators, intended for use by Residential Unit Owners in the Residential Condominium . . . the first of which is located on the south end of the building . . . and runs from the ground floor through the Residential Condominium Parking Floors (a portion of the sixth (6th) and the entire seventh (7th) floors of the Building).

That definition also provides that "[t]he Condominium Elevators and the spaces in which they operate are a part of the Residential Condominium, pursuant to the terms of the Residential Declaration." None of the amendments to the Declaration modified that definition. Thus when looking at the definition of "Condominium Elevators" in the Declaration and the condominium plat and survey together, there is an internal inconsistency related to the location of the boundary line. While the plat and survey suggest that the elevator lobby is encroaching on WRH's property, the definition of "Condominium Elevators" suggests that the

---

issue. However, McNulty contended that it raised the issue in its motion for reconsideration before the trial court, a point that WRH did not refute. McNulty argues that this sufficiently preserved the issue for appeal. *Cf. Waksman Enters., Inc. v. Oregon Props., Inc.*, 862 So. 2d 35, 42 (Fla. 2d DCA 2003) (noting that appellee properly conceded that where appellant raised an issue for the first time in his motion for rehearing in a summary judgment proceeding, "the point was properly presented to the trial court . . . and thus preserved for appellate review"). While WRH noted in its brief that McNulty's affidavits failed to address the alleged internal inconsistency, the issue was raised only as part of WRH's argument that McNulty failed to present sufficient evidence to rebut the location of the boundary line as reflected in the recorded legal instruments. WRH does not argue that McNulty failed to adequately preserve the internal inconsistency issue for appeal.

relevant elevator "and the space in which it operates" is part of McNulty's property.

The inconsistency is reflected on the face of those documents, and there is no dispute that they are recorded legal instruments. The documents were admitted and considered by the trial court. The inconsistency is itself evidence that there is uncertainty about boundary lines between WRH's and McNulty's properties. WRH's counsel asserted at oral argument that because the only matter in dispute was the location of the gate (presumably because the trial court's order only addressed the location and removal of the gate), the elevator lobby was irrelevant. To the extent that WRH argues that this court should ignore the inconsistency because it involves the elevator lobby rather than the gate, we disagree. If a document and its attachments are internally inconsistent, they cannot be said to be unambiguous as the trial court concluded. The ambiguity concerning ownership of the property on which the elevator lobby sits calls into question whether the boundary lines set forth in the plat and survey are correct. Consequently, there was a disputed issue of material fact concerning the relevant boundary line, and the trial court should not have granted summary judgment. *See Bogatov v. City of Hallandale Beach*, 192 So. 3d 600, 602 (Fla. 4th DCA 2016) ("In Florida, evidence of inconsistency in testimony and documentary evidence itself creates a disputed issue of fact for the jury, which may not be resolved by the trial court adversely to the nonmoving party [on motion for summary judgment]." (alteration in original) (quoting *Gardner v. Holifield*, 639 So. 2d 652, 657 (Fla. 1st DCA 1994))); *S & T Anchorage, Inc. v. Lewis*, 575 So. 2d 696, 699 (Fla. 3d DCA 1991) (reversing summary judgment on the basis that a disputed issue of material fact existed where a declaration of covenants contained

ambiguous and conflicting provisions relating to the vesting of property rights). Due to our resolution of this issue, it is unnecessary to address McNulty's other arguments.[4]

Reversed and remanded.

LUCAS and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

_____

[4] McNulty's second and third arguments related to the identity of the person or entity that installed the gate and whether there were disputed issues of material fact related to two of its affirmative defenses.